## ELLEN DUFFY, In Equity,

### *vs.*

## METROPOLITAN LIFE INSURANCE COMPANY.

### Penobscot.    Opinion December 8, 1900.

*Life Insurance.    Release.    Fraud.    Duress.    Equity Verdicts.*

A mother, who was the beneficiary in a life insurance policy, and her son, the insured, gave a release under seal, to the defendant company, of all their rights under the policy.    The complainant, after the son's death, now asking for a restoration of the policy, and claiming that the release on her part was obtained by duress and through the false and fraudulent representations of the agent of the defendant company who procured it; *it is held,* that the release by the insured did not bind the complainant.

The moment a policy is issued, the beneficiary obtains a vested interest in it, and in the money which may become due upon it, which the insured cannot release without the assent of the beneficiary..

*Held;* also, that the evidence falls far short of showing duress.    The threat relied upon, giving it the broadest possible significance, was not a threat which carried with it any reasonable sense of impending danger.    Mere threats of criminal prosecution do not constitute duress.

*Held;* further, that the statements of the agent to the complainant, that the insured had obtained the policy through false and fraudulent representations in his application, were made upon a reasonable belief that the statements were true, and that the company had a lawful right to attempt to secure a release of the policy.    Under the circumstances developed by the evidence, for the agent to state to the complainant as a fact, that the representations in the application were false, was not fraudulent, though it might have been untrue.

*Held;* further, that whatever was the character of the agent's statements, the complainant has failed to satisfy the court that she was deceived by them, and without proof of this she cannot be permitted to disregard her release.    She knew, as well as the agent claimed to, whether the statements of the insured in his application which were claimed to be false and fraudulent, were so, or not.    She may not have known them to be false, but the court is of opinion that she was not deceived.

In the trial of an issue in equity, the verdict of a jury is only advisory, and must be so considered in this case.

ON REPORT.    IN EQUITY.

Bill in equity to compel the defendant to return to the plaintiff a policy of life insurance, issued upon the life of her son, John M. Duffy, in which she was the beneficiary, and which she claimed she was induced to deliver to the company by the false and fraudulent representations of its agent. Her prayer was for a decree compelling the defendant to deliver the policy to her, and for general relief.

The policy was issued April 7, 1898, to John M. Duffy. He died December 16th, 1898, of consumption, and about the first of January, 1899, the company received a letter from Mrs. Duffy's attorney, asking for proofs of death under the policy, and upon refusal to furnish same, this bill was filed.

The case was tried before a jury at the January term, 1900, of the Supreme Judicial Court at Bangor, upon the following issues of fact: "Did the defendant company, by its agent Zimmerman, fraudulently and for the purpose of deceiving the complainant and of inducing her to surrender the policy of life insurance referred to, make false representations to the complainant, relative to certain alleged false statements and representations made by the insured in his application for insurance, as alleged in the complainant's bill, and was she thereby deceived and induced to surrender said policy ? Ans. Yes.

" Was said John M. Duffy in sound health on the seventh day of April, 1898 ? Ans. Yes.

" Did said John M. Duffy have an habitual cough on the fourth day of April, A. D. 1898 ? Ans. No.

" Did said John M. Duffy have consumption on either the fourth day of April, A. D. 1898, or the seventh day of April, A. D. 1898 ? Ans. No."

No decree was entered upon the return of the verdict, but the parties entered into a stipulation to report the case to the law court upon a full report of the evidence, and the answers to the questions submitted to the jury; the law court to give such weight to the answers to the questions made by the jury, as the court believes such answers are entitled to, and to decide all questions of law and fact involved and to order such a decree as the rights of the parties

require.    It was further agreed that in case the law court decided the case in favor of the plaintiff, a decree should be made for the payment of the amount due upon the policy.

The case appears in the opinion.

*P. H. Gillin and T. B. Towle*, for plaintiff.

*J. H. and J. H. Drummond, Jr.;   L. C. Stearns*, for defendant.

SITTING:   WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

SAVAGE, J.    On April 4, 1898, John M. Duffy made application to the defendant company for insurance on his own life for the benefit of his mother, Ellen Duffy, and on April 7 the defendant issued its policy whereby, in the event of the death of John M. Duffy, it promised to pay five hundred dollars to Ellen Duffy, if living, otherwise to the legal representatives of the insured.    The premiums of three dollars and one cent each were made payable on the seventh days of April, July, October and January.    The premiums for April and July, 1898, were paid, but none afterwards. In his application, Duffy made the following representations:    "I have never had any of following complaints or diseases, consumption, . . . . disease of the lungs, . . . . habitual cough," and "I am now in sound health."    It is conceded that by the terms and conditions of the application and policy, if these representations were untrue, the policy was void.    The defendant claims that they were untrue, and that Duffy, at the time he made his application, was not in sound health, that he had an habitual cough and incipient consumption.

On August 2, 1898, Ellen Duffy executed and delivered to an agent of the company, a release, under seal, of all her rights under the policy, and delivered up the policy, which was then in her possession. The next day John Duffy joined in the release which his mother had signed, and the company paid him fifteen dollars therefor.    Nothing further was done by Mrs. Duffy or John, until after John's death December 16, 1898, when Mrs. Duffy brought this bill of complaint, alleging among other things, that the release which

she signed was obtained from her without consideration, and by duress, and through the false and fraudulent representations of the agent of the company, and asking for a restoration of the policy.

In its answer, the company asserts that John Duffy made the representations which we have referred to, in his application, and that they were untrue, and it denies that the release was obtained by duress or fraud.

At the trial, certain questions were submitted to a jury, who answered that the agent of the company did make false and fraudulent representations to the complainant for the purpose of deceiving her, and that she was thereby deceived and induced to surrender the policy. The jury also answered that John Duffy was in sound health, and had neither an habitual cough nor consumption on the date of his application to the company. Thereupon the case was reported to the law court, with the stipulation that "the law court is to give so much weight to the answers to the questions made by the jury as the court believes such answers are entitled to, and to decide all questions of law and fact involved and to order such a decree as the rights of the parties require."

A verdict of a jury upon issues of fact tried before them in equity proceedings is to be regarded as advisory only, *Redman* v. *Hurley*, 89 Maine, 428, and as such we must regard the verdict in this case. It is our duty to examine the issues and the evidence as if originally submitted to us, and while we may give great weight to the conclusions of the jury upon disputed issues of fact, still their findings should not be sustained unless they satisfy the conscience of the court. *Larrabee* v. *Grant*, 70 Maine, 79. In the case we are now considering, if the result could be based solely upon the answers to the question whether John Duffy made false representations in his application or not, whether he was then in sound health or not, we might order a decree in accordance with the verdict, although possibly we might think that the evidence preponderated to the contrary. That is one of those doubtful questions involving a pure issue of fact concerning which the judgment of twelve good men and true is of great value. But when the verdict depends upon the proper application of somewhat com-

plex rules of law to the evidence, it is necessarily of less weight. But a decision that John Duffy was in sound health when insured does not decide the case. The defendant claims that in any event the complainant has released her interest under the policy. And that claim we must now consider. If the release was valid, then this bill cannot be maintained.

The release was executed by both the complainant and the insured. It was under seal, and therefore proof of consideration is not required. So far as the release by the insured is concerned, no question is raised but that it was his free and voluntary act. But the insured by his release could not bind the complainant, who was the beneficiary. The moment the policy was issued, the beneficiary obtained a vested interest in it, and in the money which might become due upon it, and the insured could not assign nor surrender it without her assent. This principle is too well settled to require the citation of authorities, and is not controverted by the defendant in this case. The sole question is, was the release executed by the complainant a valid one on her part. We think it was. The evidence falls far short of showing duress. The complainant testified that the agent told her if she insisted upon holding the policy and ever pressed it for a settlement, the company could punish her for trying to obtain money by false and fraudulent representations, and that she signed the release through fear of punishment, and by reason of the threatening talk of the agent. This is all the evidence there is of duress. The language of the agent, taken literally as stated by the complainant, was no more than the expression of an opinion as to what the company *could* do. But giving it the broadest possible signification, it was not a threat which carried with it any reasonable sense of impending danger. Mere threats of criminal prosecution do not constitute duress. *Harmon* v. *Harmon*, 61 Maine, 227 ; *Higgins* v. *Brown*, 78 Maine, 473.

But, further, the complainant in her bill alleges that the agent "falsely and fraudulently represented to her that the policy was utterly void and worthless," and that the insured "John M. Duffy had falsely and fraudulently represented certain facts concerning

his health which caused said company to issue said contract of insurance," and upon this point she testified that the agent told her that the company had ordered him "to lift the policy because it was utterly void," and further that the agent told her that her son "had obtained the policy through false and fraudulent representations." This is all. She did not testify what those representations were, nor that the agent told her what they were. But the agent testified, and his testimony taken in connection with the allegations of the plaintiff in her bill leads us to believe that he did tell her what the representations were which were alleged to be false, and that they were the representations that he was in "sound health" and that he never had an "habitual cough."

The statement of the agent, as testified to by complainant, that the policy was void was evidently based upon the alleged misrepresentations in the application, and undoubtedly was so understood by Mrs. Duffy.

As bearing upon this point, we gather from the testimony offered by the complainant that John M. Duffy had had a cold in the winter of 1898, that he was confined in the house by it five days, and that he had a physician, though the complainant testified that John did not cough then nor later, until June, 1898. John's employer, a witness for the complainant, testified as follows:

"Q. Did you ever hear him cough through the month of April in your store?

A. I have no recollection of hearing it, sir; in fact he didn't have—I don't know as he had much of a cough; seemed to be kind of a—I should say sort of a—well, tired feeling more than anything else.

Q. And that was in July, when he left?

A. That was in June; along in June he told me he should have to take a rest, go up in the woods; didn't feel, not so well as usual, he said."

Duffy did leave the store July 2, and went into the woods, and never afterwards returned to work. He died of consumption the middle of the December following. It appears that the officers of the defendant company, in New York, as early as May 4,

1898, received information that Duffy was not in sound health, and had consumption, at the date of the policy, and directed an investigation of the case to be made.    That the company received such information does not, of course, prove that it was true, but it does have an important bearing upon the good faith, the want of fraud, of the company in directing the investigation and in seeking to cancel the policy.    It tends to rebut the allegation of intent to deceive. The evidence satisfies us that on August 2, the date of the release, the officers and agent of the company had reason to believe, and they apparently did believe, that John M. Duffy's representations in his application were untrue; and if so, they had a right to seek a cancellation of the policy.    Under such circumstances, for the agent to state to the complainant as a fact, that the representations in the application were false, would not be fraudulent, though it might be untrue.

But whatever may have been the character of the agent's statements, the complainant fails to satisfy us that she was deceived by them, and without proof of this she cannot ask us to disregard her release.    *McDonald* v. *Trafton*, 15 Maine, 225; *Pratt* v. *Philbrook*, 33 Maine, 17; *Flanders* v. *Cobb*, 88 Maine, 488.    The complainant and her son John lived together as members of one family, in the intimacy of mother and son.    All matters relating to his health and his habitual cough, or want of it, were as well known to her as the agent claimed them to be to himself.    He made no statement of a fact outside the limits of her daily observation.    He did not claim to have means of knowledge that she did not possess. So far as his statement involved an opinion, her opinion was as good as his, and based on a far more intimate acquaintance.    She knew, as well as he claimed to, whether his statements to her were true or false.    She may not have known them to be true, but, we think, she was not deceived by them.    In her testimony she does not claim that she was deceived, but rather lays great stress upon the threats of the agent, the alleged duress.    Our conclusion is strengthened by the fact that though she now claims that the conduct of the agent was coercive and false and fraudulent, and therefore entirely reprehensible, she appears to have acquiesced for

several months; and during the lifetime of her son, and while it might have been possible by his aid and testimony to prove the falsity of the agent's statements, she took no steps to right her wrongs, to have the release annulled, and the policy restored.

Therefore, notwithstanding the verdict, the entry must be,

*Bill dismissed with costs.*