MODERN WOODMEN OF AMERICA *v.* LOTTIE HEADLE ET AL.

Special Term at Rutland, November, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 9, 1914.

*Mutual Benefit Insurance—Change of Beneficiary—Prescribed Mode of Change—Requisite Compliance—Waiver as to Mode of Change of Beneficiary—Statutes and Rights of Beneficiary —Interpleader—Burden of Proof—Equity—Regarding That as Done which Ought to Have been Done.*

Where a by-law that is expressly made a part of a benefit certificate provides that no change of beneficiary shall be effective until the old certificate, with designated indorsements thereon, has been forwarded to the head camp clerk "and a new certificate issued during the lifetime of the member, and until such time the old certificate shall remain in force," and a member, desiring to change the beneficiary duly forwarded his certificate, with the requisite indorsement and directions, to the head camp clerk, but died before it reached him, the new certificate, issued immediately after the receipt of the original by the head clerk, did not become effective so as to change the beneficiary, but the original certificate continued in force.

By-laws of a benefit society, expressly made a part of a benefit certificate, must be given full effect, unless contrary to law, or unless the circumstances justify the aid of a court of equity.

The rights of a beneficiary under an ordinary life insurance policy do not differ essentially from those of a beneficiary under a benefit certificate, as in each case the particular contract determines those rights.

Under a benefit certificate reserving to the member only the right to change the beneficiary, the member has no pecuniary interest in the fund, but only a power of appointment, and that power is subject to the limitations prescribing the manner in which it must be exercised.

By taking out the benefit certificate, a member of a fraternal beneficiary association creates a voluntary trust in favor of the selected

beneficiary, which cannot be revoked except under, and in accordance with, the power reserved for that purpose in the contract.

Under a benefit certificate reserving to the member the power to change the beneficiary, the latter does not, during the life of the member, have a vested interest in the certificate or in the fund payable thereunder, but a mere expectancy that the member may defeat by duly exercising the power of substitution.

Where a benefit certificate reserves to the insured the mere naked power to substitute a new beneficiary, that power must be exercised according to the terms of the contract governing the exercise of that right, as such terms qualify the right of substitution, are matter of substance, and, unless substantially complied with, no change of beneficiary will be effected.

Although the interest of a beneficiary, under a benefit certificate reserving to the insured the right to change the beneficiary, is a mere expectancy, it is an expectancy in the nature of an inchoate right, and gives the beneficiary the right to insist that the change of beneficiary shall be effected only in substantial conformity to the terms of the contract.

While the requirements relating to the change of beneficiary, being for the benefit of the society, may be waived by it during the life of the insured and before the interest of the beneficiary becomes vested, the society cannot be held to have waived the requirement that, to effect a change of beneficiary, a new certificate must be issued in the lifetime of the insured member by issuing the new certificate after his death, especially where, at the time the new certificate was issued, the society was ignorant of the fact that the insured was dead, as a waiver is the intentional relinquishment of a known right.

Where a benefit society, after the death of an insured member, and in ignorance thereof, issued a new certificate changing the beneficiary, it did not, by subsequently bringing a bill of interpleader and paying the fund into court, waive the requirements of its by-laws relating to the change of beneficiary, and expressly made a part of the original certificate, since the rights of the parties became fixed at the death of the insured, and the society was powerless to affect vested rights.

Where a beneficiary under a new benefit certificate and the one under the original certificate are required to interplead, the burden is on the former to show that the change has been made in the manner designated in the contract, or that the case is one calling for equi-

table relief; that is, the party that succeeds must make a case that would entitle him to prevail against the society, since the rights of the claimants, as between themselves, depend on the contract between the insured and the society at the instant of his death.

Where a benefit certificate provided that no change of beneficiary could be effected unless a new certificate was issued during the lifetime of the member, and a member surrendered his old certificate and did all he could do to effect a change of beneficiary, but died before the new certificate could be issued, and there was no fault on the part of anyone, equity can grant no relief under the rule that equity regards that as done which ought to have been done, for in such cases that maxim can be invoked only where the facts are such as to make it inequitable to apply the general rule to the particular case, because of some fault not imputable to the insured.

APPEAL IN CHANCERY. This is a bill of interpleader. Answers were filed and the defendants ordered to interplead, which they did. Heard on the pleadings and the facts found by the chancellor at the March Term, 1913, Rutland County, *Butler*, Chancellor. Decree that the claimant, Lottie Headle, the beneficiary named in the original certificate, is entitled to the disputed fund. The other claimants appealed. The opinion states the case.

*T. W. Moloney* and *G. W. Platt* for the appellee.

At the decease of the insured, the old certificate was in full force, the rights of the beneficiary became instantly vested, and could not be thereafter divested by an act of the society. *Kemper* v. *Modern Woodmen of America*, 70 Kan. 119; *Independent Foresters* v. *Kelleher*, 36 Ore. 501, 78 Am. St. Rep. 785; *Daniels* v. *Pratt*, 143 Mass. 416; *Knights of Macabees* v. *Sackett*, 34 Mont. 357, 115 Am. St. Rep. 532; *Fink* v. *Fink*, 171 N. Y. 624; *Brown* v. *Grand Lodge, etc.*, 57 Atl. 176; *McLoughlin* v. *McLoughlin*, 43 Am. St. Rep. 83; *McCarly* v. *Supreme Lodge, etc.*, 153 Mass. 314; *Elsey* v. *Odd Fellows Mut. Relief Asso.*, 142 Mass. 224; *Wendt* v. *Iowa L. of H.*, 72 Iowa 682; *Union Mutual Asso.* v. *Montgomery*, 70 Mich. 587, 14 Am. St. Rep. 519; *Holland* v. *Taylor*, 111 Ind. 121; *Counseman* v. *Modern Woodmen of America*, 96 N. W. 672.

*Walter S. Fenton* for the appellants.

There is a distinction between the rights of a beneficiary under an ordinary life policy and under a benefit insurance certificate; in the one case those rights are fixed by the terms of the policy, in the other, they depend on the certificate and the rights of the member under the constitution and by-laws of the society *Hellenberg* v. *Dist. No. 1*, 94 N. Y. 580; *Kentucky etc. Ins. Co.*, v. *Miller*, 13 Bush. 489; *Com.* v. *Weatherbee*, 105 Mass. 149; *Masonic etc. Asso.* v. *Burkhart*, 110 Ind. 189; *Swift* v. *Railway, etc.*, 96 Ill. 309; *Royal Adelphia* v. *Cappella*, 41 Fed. 1, 12 L. R. A. 210 (note), 29 Cyc. 126 (notes 19-20). Under the certificate, and during the lifetime of the member, the beneficiary has only an expectancy,—no vested rights. *Legion of Honor* v. *Adams*, 68 N. H. 236, 44 Atl. 330; *Barton* v. *Asso.* 63 N. H. 535; *Knights* v. *Watson*, 64 N. H. 517; *Tepper* v. *Royal Arcanum*, 59 N. J. Eq. 321, 45 Atl. 111; *Marsh* v. *Supreme Council*, 4 L. R. A. 382.

Where a member has attempted to change a beneficiary, and has done all that he can, even though it is out of his power to comply with all prescribed formalities, equity will aid him and compel the change according to his intention, and hold it in equity to have been accomplished. *Brown* v. *Grand Lodge*, 80 Iowa 287; *Fisk* v. *Equitable Union*, 9 Cent. Rep. 403; *Grand Lodge* v. *Child*, 70 Mich. 163; *Martin* v. *Stubbins*, 126 Ill. 387, 18 N. E. 657; *Luhrs* v. *Luhrs*, 123 N. Y. 367, 9 L. R. A. 534, 25 N. E. 388; *Asso.* v. *Kirgin*, 28 Mo. App. 80; *Clark* v. *Hirschel et al.*, 9 L. R. A. 841; *Simcoke* v. *Grand Lodge*, 15 L. R. A. 114.

The requirements as to change of beneficiary are for the protection of the society and may be waived by it. *Hoeft* v. *Supreme Lodge*, 33 L. R. A. 174; *Henderson* v. *Modern Woodmen of America*, 163 Mo. App. 187, 146 S. W. Rep. 102; *Titsworth* v. *Titsworth*, 40 Kan. 571; *Manning* v. *A. O. U. W.*, 86 Ky. 136; *Spawn* v. *Chew*, 60 Tex. 533; *Fuos* v. *Dietrich*, 101 S. W. 291; *A. O. U. W.* v. *McFadden*, 213 Mo. 287, 29 Cyc. 119.

TAYLOR, J. This is a bill of interpleader. The orator is a fraternal beneficiary society organized under the laws of Illinois with the principal office at Rock Island, Illinois, and doing business throughout the United States. The defendants are Lottie Headle, widow of William D. Headle, a deceased member of the society, and Guy Milo Headle and Carrie Elsie Headle, minor children of the said William D. by a former marriage and their

guardian George H. Granger. The defendants answered, the fund in controversy was paid into court, the orator was discharged and the defendants ordered to interplead. The case was heard by the chancellor who decreed the fund to Lottie Headle, from which decree the other defendants appeal.

The chancellor finds that in May, 1901, William D. Headle, then a resident of Rutland in this State, applied for membership in the society through the local camp at Rutland and on July 4, 1901, the orator issued to him a benefit certificate in the sum of $2,000.00 payable in case of death while a beneficial member of the society in good standing, subject to all the terms and conditions thereof, to his wife, the said Lottie Headle, as beneficiary. Said benefit certificate contained, among others not necessary to be noted, the provision that "all the conditions contained in this certificate, and the by-laws of this society, as the same now exists, or may hereafter be modified or enacted, shall be fully complied with." The said William D. Headle died at Rutland on the 6th day of March, 1911, and was a member of said society in good standing at the time of his death.

Section 47 of the by-laws of said society then in force—and, so far as appears, in force during all the time he was a member thereof—provided: "If a member in good standing at any time desires a change in his beneficiary or beneficiaries and to obtain a new certificate, he shall pay to the camp clerk a fee of 50 cents and deliver to him his benefit certificate, with the surrender clause on the back thereof duly filled out and executed by him, designating therein the change desired in the beneficiary or beneficiaries. The execution of such surrender clause by the neighbor shall be in the presence of, and attested by, his camp clerk. If, however, the member be so situated that he cannot execute the said surrender clause in the presence of the clerk of his camp, the signature of the member thereto may be attested by the jurat or acknowledgement of any person authorized by law to administer oaths and take acknowledgements, and the same shall be forwarded to the clerk of his local camp. The local clerk shall deposit one-half of said fee of 50 cents in the general fund of the camp, and forward said certificate, with said surrender clause indorsed thereon, and the remaining half of said fee to the head clerk, who shall thereupon issue a new benefit certificate payable to the beneficiary or beneficiaries named in said surrender clause, depositing the fee of 25 cents

in the general fund of the society. No change in the designation of beneficiary or beneficiaries shall be effective until the old certificate shall have been delivered to the head clerk and a new certificate issued during the lifetime of the member, and until such time the old certificate shall remain in force. The new beneficiary or beneficiaries so named shall be within the description of beneficiaries .contained in Section 45 hereof. Any attempt by a member to change the payee of the benefits of his benefit certificate by will or other testamentary document, contract, agreement, assignment or otherwise than by strict compliance with the provisions of this section relating to change of beneficiary, shall be absolutely null and void. Any agreement entered into by the member, by the terms of which he attempts to assign the benefits agreed to be paid under the certificate, or any part thereof, to any other person or persons than the beneficiary or beneficiaries designated in the certificate, shall be absolutely void; as shall any agreement entered into by which the member agrees not to change his beneficiary if he afterwards violates such agreement and exercises his right to at any time before death change his beneficiary.''

A few days previous to his death William D. Headle had an interview with one Owens, consul of the local camp, in which he expressed a desire to change the beneficiary named in his certificate, making it payable in case of his death one-half to his wife and one-half to his children. Not wishing to acquaint his wife with this change, it was arranged that the son Guy should get the certificate in the absence of the wife and send it to said Owens. Subsequently and some time previous to signing the order for change of beneficiary, Clarence L. Dye, clerk of the local camp, had an interview with said Headle in which he expressed a like purpose and indicated the change he wished to make in the certificate; whereupon Dye wrote on the back of the certificate in a blank provided for that purpose the order for the change which Headle desired. Said order reads as follows:

CHANGE OF AMOUNT OR BENFICIARY.

I, W. D. Headle, the Neighbor to whom this Benefit Certificate was issued, do hereby surrender and request the cancellation of this Benefit Certificate, and order that a new one shall be issued upon the conditions and subject to all of the provisions contained in my original application for membership, in the amount of Two Thousand Dollars, and the same be made

payable One Thousand to Lottie Headle, my wife; and One Thousand to Guy Milo Headle and Carrie Elsie Headle, who is related to me as son and daughter.

W. D. HEADLE.

Signed in my presence, at Rutland, State of Vermont, this 4th day of March, 1911.

CLARENCE L. DYE,
*Clerk of Camp No. 8581, M. W. A.*

Dye was not present when this order for change of beneficiary was signed by Headle.

On March 4, 1911, the certificate bearing the order signed by Headle was delivered to Dye with the required fee of 50 cents. Thereupon Dye indorsed the order as appears above and immediately forwarded the certificate with the required fee by mail to C. W. Hawes, the head clerk of the society, accompanied by a request from him as clerk of the Rutland Camp that the beneficiary be changed according to the indorsement on back of the certificate. The certificate was received by said Hawes at Rock Island, Illinois, March 6, 1911, at 8:30 o'clock a. m., central standard time.. After looking up the records in his office to ascertain if Headle was a member of the society in good standing, Hawes immediately (12 minutes later) issued a new certificate to said Headle in all respects like the original one except that in case of death one thousand dollars was to be paid to Lottie Headle, his wife, and one thousand dollars to Guy Milo Headle and Carrie Elsie Headle, his son and daughter. The new certificate was forwarded by mail to the clerk of the camp at Rutland, who received it in due course of mail.

William D. Headle died at Rutland, Vermont, at four o'clock a. m. eastern standard time, equivalent to three o'clock a. m. central time, or five and a half hours before the original certificate reached the office of the head clerk at Rock Island.

The only question presented is whether, on the foregoing facts, the new certificate became effective. The defendant Lottie Headle claims that the new certificate is null and void because not issued in accordance with the by-laws of the society in the lifetime of Headle and that she is entitled to the full amount. The other defendants claim that Headle having performed every duty incumbent upon him under the by-laws, in equity the change of beneficiaries was complete upon the delivery of the original certificate to the local camp clerk; that the by-law

in question was not made for the benefit of the beneficiary, and so cannot be taken advantage of by one seeking to defeat the express intention of the member to effect a change of beneficiaries; that. the by-law being for the protection of the society it could and did waive its requirements; and that the issuing of the new certificate was only a formal ministerial act which, to give effect to the intention of the member should in equity be treated. as having been done as of the time when the certificate was delivered to the camp clerk at Rutland.    They ask one thousand dollars of the fund be decreed to them.

By the express terms of the certificate the by-laws of the society are made a part of the contract.    The certificate provides that the member while in good standing is entitled to the privileges of the society and that his beneficiary therein named, in case of his death while a beneficial member in good standing, shall be entitled to participate in the benefit fund of the society to the amount of two thousand dollars, subject to all the conditions contained in the certificate and by-laws of the society.    Sec. 49 of the by-laws provides:    ''The contract for beneficial membership between the society and the beneficial member shall include the application for beneficial membership, the medical examination furnished by the applicant, the benefit certificate issued thereupon and the by-laws of the society as they exist at the time of the issuance of the certificate, or, as they may be thereafter amended, modified or changed; all with the same 'force and effect as if written into the face of the benefit certificate.    This provision shall be construed not only to govern the right and conduct of the member, but also in determining the beneficial liability of the member to the society and of the society to. the member and his beneficiary or beneficiaries.''

When the provisions of the by-laws relating to change of beneficiaries are read into the contract, as they must be, it is seen that the contract between the assured and the society specifies the act which shall effectuate the change of beneficiaries and fixes the time when the change shall take effect. This contract is to be construed and given force and effect as other contracts upon similar subjects.    *Grand Lodge A. O. U. W.* v. *Edwards et al.,* (Me.) 89 Atl. 147.

The by-law in question provides that no change of beneficiary shall be effective until the old certificate has been de-

livered to the head clerk and a new certificate issued *during the
lifetime of the member;* that until such time the old certificate
shall remain in force; and that any attempt by a member to
change the beneficiary otherwise than by a strict compliance
with the provisions of the by-law *shall be absolutely null and
void.* The evident purpose of these restrictions upon the right
of the member to change his beneficiary is to avoid controver-
sies as to when the rights of one beneficiary terminate and
those of the other begin; and the by-law must be given full force
and effect unless contrary to law, or, this action being in equity
unless the circumstances of the case justify the parties in invok-
ing the aid of the court of chancery. It is not claimed that the
by-law is unlawful, either as being in conflict with the general
laws or with the charter of the society. Passing for the pres-
ent the question of the equities of the case, we come to the con-
sideration of the relations of the society, the member and the
beneficiaries under this contract.

Our cases relating to the rights of beneficiaries under
ordinary life insurance policies afford but little aid in the solu-
tion of the question. It was held by this Court in *Atkins* v. *At-
kins,* 70 Vt. 565, 41 Atl. 503, reaffirmed in *Ferguson et al.* v.
*Phoenix Mutual Life Ins. Co.,* 84 Vt. 350, 79 Atl. 997, 35 L. R. A.
(N. S.) 844, construing the ordinary life insurance contract, that
a policy of life insurance, and the money to become due under it
belong from the time it is issued, to the person or persons named
in it as beneficiary or beneficiaries, and that there is no power
in the person procuring the insurance by any act of his, by deed
or will, to transfer to any other person the interest of the per-
son named, nor to modify and limit such interest—that an ir-
revocable trust is created; and further, that the person who pro-
cures insurance on his own life payable to a beneficiary named
in the policy thereby creates in effect a voluntary trust, and
what is equivalent to a voluntary settlement, for the benefit of
such beneficiary, and when such a trust or settlement is created,
it cannot be annulled nor modified by the act or declaration of
the party creating it, unless a power of revocation or modifi-
cation is reserved by the terms of the trust for that purpose.
See *Mut. Life. Ins. Co.* v. *Allen,* 212 Ill. 134, 72 N. E. 200; *Duffy*
v. *Metropolitan Life Ins. Co.,* 94 Me. 414, 47 Atl. 905. In the
case at bar the contract in terms reserves to the member the
power to designate a new beneficiary. This being so, the case

falls within the exception to the rule above stated. Notwithstanding this, the rule sheds some light upon the relation of the parties under this benefit certificate.

It is sometimes said that the rights of a beneficiary named in an ordinary life insurance policy differ essentially from the rights of a beneficiary designated in a benefit certificate, due to the purpose and character of the mutual benefit society or association. It is not apparent, however, that any reason exists for the distinction and the weight of authority seems to be to the contrary. If the rights of the beneficiary under the ordinary policy of insurance are vested from the time the policy is issued it is because the power to revoke or change the designation of a beneficiary has not been reserved to the insured; while, on the other hand, if the rights of the beneficiary in the case of a benefit certificate do not become vested during the lifetime of the insured, it is because the power to change the beneficiary is secured to the insured, either in the contract itself or in the charter or by-laws of the society. *Finnell* v. *Franklin,* (Colo.) 134 Pac. 122. It is the recognized rule in the case of an ordinary insurance policy that where the contract so provides the beneficiary may be changed at the instance of the insured and that in such cases no vested right exists in the beneficiary, in the absence of circumstances tending to establish an equitable interest in the proceeds of the policy. Note, Ann. Cas. 1912 B. 1145; *Holland* v. *Taylor,* 111 Ind. 121, 126, 12 N. E. 116; *Ind. Order of Foresters* v. *Kiliher,* 36 Ore. 501, 59 Pac. 324, 1109, 60 Pac. 563, 78 Am. St. Rep. 785; *Loco. Eng. Mut. Life & Acci. Ins. Asso.* v. *Winterstein et al.,* 58 N. J. Eq. 189, 44 Atl. 199.

On the other hand the cases are numerous that hold that for many purposes mutual benefit associations are insurance companies, that certificates issued by them are regarded and treated as insurance policies and governed by the rules applicable to such contracts, that the right to change the beneficiary without his consent in such case exists because reserved in the contract or the by-laws of the association and that without such power reserved to the insured the beneficiary would have a vested and irrevocable interest in the contract. *Martin* v. *Stubbins,* 126 Ill. 387, 18 N. E. 657, 9 Am. St. Rep. 620; *Locomotive Eng's. Mut. Life & Acci. Ins. Asso.* v. *Winterstein et al.,* 58 N. J. Eq. 189, 44 Atl. 199, 200; *Love* v. *Clune,* 24 Colo. 237, 50 Pac. 34; *Pettinger* v. *Pettinger,* 28 Colo. 308, 64 Pac. 195, 89 Am. St.

Rep. 193; *Bolton* v. *Bolton,* 73 Me. 299; *Com.* v. *Wetherbee,* 105
Mass. 149; *State* v. *Farmers' & M. Asso.,* 18 Neb. 281, 25 N. W.
81; *Wiggin* v. *Knights of Pythias,* 31 Fed. 122; *Knights of
Honor* v. *Nairn,* 60 Mich. 44, 26 N. W. 826; *Note to Lake* v.
*Minnesota & M. Asso.,* 52 Am. St. Rep. 555, 561; *Block* v. *Valley
Mut. Ins. Co.,* 52 Ark. 201, 12 S. W. 477, 20 Am. St. Rep. 167;
*Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295, 73 S. W. 102,
100 Am. St. Rep. 73; *Finnell* v. *Franklin,* (Colo.) 134 Pac. 122.

It is to be observed that the insured member under this
contract has no pecuniary interest in the fund. He simply has
a power of appointment, which enables him at will to change the
beneficiary. The extent of his control over the fund to be paid
at his death is the power to change the beneficiary in the man-
ner provided in the contract. *Holland* v. *Taylor,* 111 Ind. 121,
12 N. E. 116; *Fink* v. *Fink,* 171 N. Y. 616, 64 N. E. 508. The
power, however, is not an absolute one but is subject to certain
limitations, and is to be exercised in a certain manner and with-
in a certain time specified in the contract. It is held in most
jurisdictions that in no event does the insurance money become
assets of the estate of the insured or recoverable as such by his
administrator. In some, in case of failure of beneficiary, the fund
is distributable to the heirs under the intestate law to the exclu-
sion of the administrator and creditors; in others, the administra-
tor takes the money in trust to distribute in accordance with the
statute of distributions but not as assets of the estate; and in
still others, the association is held under no obligation to pay
any one, but in such case the fund goes to the association.
Note, 52 Am. St. Rep. 567, 568, and cases cited; *Supreme Colony
United Order of Pilgrims Fathers* v. *Towne et al.,* (Conn.) 89
Atl. 264; *Finnell* v. *Franklin,* (Colo.) 134 Pac. 122.

One of the objects of a society like the one in the case at
bar is to furnish financial aid and indemnity to a certain class
of beneficiaries specified in the by-laws of the society. The so-
ciety permits the member to select from the class open to desig-
nation the person or persons who are to receive the benefit of
this indemnity, and upon certain conditions to change the bene-
ficiary to be chosen from the same class. By taking out the
benefit certificate the member created a voluntary trust in favor
of the selected beneficiary which could not be revoked except for
the power reserved for that purpose in the contract. *Conn.
River Sav. Bk.* v. *Albee's Estate,* 64 Vt. 571, 578, 25 Atl. 487, 33

Am. St. Rep. 944; *Sargent* v. *Baldwin*, 60 Vt. 17, 13 Atl. 854; *Atkins* v. *Atkins*, 70 Vt. 565, 41 Atl. 503; *Ferguson et al.* v. *Phoenix Mut. Life Ins. Co.*, 84 Vt. 350, 79 Atl. 997, 35 L. R. A. (N. S.) 844.

With reference to the rights of the beneficiaries under such a contract the authorities are numerous, and practically all to the same effect, viz.: that under a contract reserving to the member the power to change the beneficiary the one designated in the certificate does not, during the life of the member, have a vested right or interest in the certificate or the fund payable thereunder. All that the beneficiary has during the lifetime of the member who holds the certificate is a mere expectancy—an anticipated benefit—which the member may defeat by exercising the power of substitution. The following illustrate the many cases upon this question. *Marsh* v. *Supreme Council*, 149 Mass. 512, 21 N. E. 1070, 4 L. R. A. 382; *Barton* v. *Prov. Mut. Relief Asso.*, 63 N. H. 535, 3 Atl. 627; *Supreme Council L. of H.* v. *Adams*, 68 N. H. 236, 44 Atl. 380; *Tepper* v. *Royal Arcanum*, 59 N. J. Eq. 321, 45 Atl. 111; *Delany* v. *Delany*, 175 Ill. 187, 51 N. E. 961.

No question is made by that the parties may stipulate conditions under which the power to substitute beneficiaries may be effected. When the contract gives the insured member merely a naked power of substitution it is the prevailing rule that to be available the power must be exercised according to the terms of the contract. Such terms qualify the right of substitution, are a matter of substance and, unless substantially complied with, no change of beneficiary will take place. *Finnell* v. *Franklin, supra; Holden* v. *Modern Brotherhood of America,* 151 Ia. 673, 132 N. W. 329; *Stephenson* v. *Stephenson,* 64 Ia. 534, 21 N. W. 19; Notes, 5 L. R. A. 95 and 19 Am. St. Rep. 790 and cases cited. It follows that Headle's desire to change his beneficiary expressed to the officers of the local camp and evidenced by his attempt to make a change is not controlling. Mere intention to make a change is not enough. The acts prescribed are forms imposed upon the execution of the power and are designated for the protection of the society, the member and the beneficiary. *Fink* v. *Fink, supra.*

While the interest of the beneficiary designated in the original certificate is, during the lifetime of the insured member, a contingent interest—a mere expectancy—liable at any time to

be defeated by the designation of a new beneficiary, it does not follow that such beneficiary has no interest in the certificate. He has an expectancy in the nature of an inchoate interest which, it is held in some jurisdictions, gives him the right to insist that a change of beneficiary be made, if attempted, in substantial conformity with the stipulations of the contract: *Holland* v. *Taylor, supra; Farrar* v. *Braman,* 171 Ind. 529, 86 N. E. 843; *Faubel* v. *Eckhart,* 151 Wis. 155, 138 N. W.. 615; Note, 5 L. R. A. 95.

The prevailing rule seems to be that unless the case presents a question of equity the provision of a by-law respecting change of beneficiaries may be waived by the society at any time before the death of the member, and that the beneficiary whose expectancy is thus defeated cannot object. If the society, before the rights of the beneficiary become vested, sees fit to waive strict compliance with its by-laws and issues a new certificate changing the beneficiary, all questions as to whether or not it is done in accordance with the contract are concluded. *Simcoke* v. *Grand Lodge A. O. U. W.,* 84 Ia. 383, 51 N. W. 8, 15 L. R. A. 114; *Titsworth* v. *Titsworth,* 40 Kan. 571, 20 Pac. 213; *Delaney* v. *Delaney,* 175 Ill. 187, 51 N. E. 961. In the latter case it was said: "The original contract between the parties evidenced by the old certificate was abandoned by both parties to it, to wit, the society and the member, before the death of Martin Delaney (the member). It is difficult to see what rights remain to the beneficiary under it. * * * The member and the society are the parties to the contract and they may, during the life of the member, agree to the change of the beneficiary in any manner which is satisfactory to both parties. * * * When the society has actually changed the beneficiary at the request of the member all questions as to whether the manner of changing the beneficiaries provided in the contract have been followed are concluded and absolutely disposed of."

It is urged that the society waived the requirements of the by-laws by issuing the new certificate. While the society may waive compliance with the requirements of the contract made for its protection, as for example by issuing a new certificate without requiring the old certificate to be surrendered, it cannot be held in this case to have waived any right that it had to object to the attempted change of beneficiary by issuing the new certificate, since at the time it was done the head clerk was

ignorant of the prior death of Headle. The society being ignorant of this fact, it waived nothing by that act. It furnishes no evidence of an intentional relinquishment of a known right, which is necessary to constitute a waiver. *Barber* v. *Vinton*, 82 Vt. 327, 73 Atl. 881; *Duggan* v. *Heaphy*, 85 Vt. 515, 528, 83 Atl. 726.

It is also said that it waived the provisions of the by-laws by paying the fund into court and asking that the adverse claimants be required to interplead. By the great weight of authority the society cannot be regarded as having waived the requirement of the by-laws by bringing the bill of interpleader and paying the fund into court. By so doing the society admitted its liability under one or the other of the certificates and asked the court of chancery to protect it by determining the conflicting rights of the claimants; but it cannot be held that the rights of either claimant are prejudiced thereby. The rights of the parties became fixed at the moment of the death of the insured member and the society was powerless to do anything to affect vested rights. They are controlled by the contract as it was at that time. *Freund* v. *Freund*, 218 Ill. 189, 75 N. E. 925, 109 Am. St. Rep. 283; *Finnell* v. *Franklin*, 134 Pac. 122; *Faubel* v. *Eckhart*, 151 Wis. 155, 138 N. W. 615; *McLaughlin* v. *McLaughlin*, 104 Cal. 171, 37 Pac. 865, 43 Am. St. Rep. 83; *Independent Order of Foresters* v. *Kiliher*, 36 Ore. 501, 59 Pac. 324, 1109, 60 Pac. 563, 78 Am. St. Rep. 785; *Ancient Order of Gleaners* v. *Barry*, 165 Mich. 1, 130 N. W. 191, 34 L. R. A. (N. S.) 277; *Londry* v. *Sovereign Camp of Woodmen*, 140 Mo. App. 45, 124 S. W. 530; *Wendt.* v. *Legion of Honor*, 72 Ia. 682, 34 N. W. 470; Note, 15 L. R. A. 350.

The general rule is usually stated thus: When the laws of a benefit society prescribe a mode of changing the beneficiary the mode prescribed must be followed and no change can be made in any other manner. Niblock on Mut. Ben. Soc. §221 et seq.: Bacon on Ben. Soc. §307. The rule touching waiver of the by-law of the society is stated in a comprehensive manner in Niblock on Mutual Benefit Societies, 2nd Ed. §222; "The member and the society may, during the life of the member, waive these requirements, and may agree upon a new beneficiary of the contract in any manner satisfactory to both parties. It does not follow, however, that after the death of a member the society may waive these requirements and recognize as valid an attempted

change of beneficiaries made by the member in a manner different from that set forth in the contract. The rights of the parties are controlled by the contract as it was at the date of the death of the member, and after these rights have attached by the death of the member, no consent or act of the society can defeat or even affect them. The payment of the fund into court for the benefit of the person who may be declared to be entitled to it, in no way improves or prejudices the legal position of either the original or the substitute beneficiary.'' On this question see also *Freund* v. *Freund,* 218 Ill. 189, 75 N. E. 925, 109 Am. St. Rep. 283; *Fink* v. *Fink, supra.*

In *Counseman* v. *Modern Woodmen of America,* 69 Neb. 710, 96 N. W. 672, 93 N. W. 414, it was held that the power to change the beneficiary under the contract there under consideration rested with the member and the society; that the change was conditional upon compliance with the by-laws of the society; that the designation of a beneficiary was a matter of agreement between the member and the society; that under the by-laws there in force the member was powerless to effect the change of beneficiary alone; that after his death the society was powerless to do it for him. The court said in passing that doubtless if the member had procured the certificate to reach the head camp during his lifetime properly filled out, so that he would have been entitled to the approval and the issuance of a new certificate, *in the absence of an express restriction in the by-laws,* the new beneficiary would be entitled to the fund.

The rights of the original beneficiary and of the beneficiaries named in the new certificate depend, as between themselves, on the contract between Headle and the society at the time (the instant) of his death. *Stemler* v. *Stemler,* 31 S. D. 595, 141 N. W. 780; *Supreme Lodge K. & L. of Honor* v. *Menkhausen,* 209 Ill. 277, 70 N. E. 567, 65 L. R. A. 508, 101 Am. St. Rep. 239. The respective rights of the claimants must be determined with reference to the power reserved to Headle under the contract to deal with the certificate. *Sofge* v. *Supreme Lodge K. of H.,* 98 Tenn. 446, 39 S. W. 853; and the burden is upon the new beneficiaries to show that the change has been made in the manner provided for in the contract or that the case is one calling for equitable relief. *Grand Lodge A. O. U. W.* v. *Edwards,* (Me.) 89 Atl. 147; *Am. Legion of Honor* v. *Smith,* 45 N. J. Eq. 466, 17 Atl. 770. The rule seems to be that the party

that succeeds must make a case that would have entitled him to prevail against the society. *Ballou* v. *Gile,* 50 Wis. 614, 7 N. W. 561; *Ireland* v. *Ireland,* 42 Hun. 214.

There are several reported cases in which it has been held that the failure of the appointment of a new beneficiary to reach the home office before the death of the member did not defeat the change, applying the rule that in equity that will be deemed done which ought to have been done; and the designation has been considered as relating back to the time when the member executed the application. No case has been called to our attention, and a careful review of the cases fails to disclose one, giving effect to the new designation which did not reach the home office during the lifetime of the member when, as here, the contract expressly provides that such an attempted change of beneficiary shall be void. Moreover, in none of the cases examined does it appear, as here, that the by-laws provided that the old certificate should remain in force until the new certificate was issued in the lifetime of the member. In most of these cases some equity existed in favor of the new beneficiary, as that the delay was due to the fault or fraud of the original beneficiary or to the negligence or collusion of the officers of the society, and equity gives effect to the intention of the member to change the beneficiary by treating that as done which ought to have been done. The leading case cited by the minor claimants, *Supreme Conclave, Royal Adelphia* v. *Cappella,* 41 Fed. 1, is of this class and is readily distinguishable from the case at bar on that ground. In that case the original beneficiary had possession of the certificate and, though she had agreed to see that the change was made, neglected to deliver it to the member that it might be surrendered. The request for the change properly made out reached the society in the lifetime of the member but before the new certificate was made out the member died. The court on equitable grounds treated that as done which ought to have been done and gave effect to the attempted substitution. In disposing of the question Mr. Justice Brown states that there are three exceptions to the general rule that a change of beneficiary in a benefit certificate must be made in the manner pointed out by the rules of the association, any material deviation from which will invalidate the transfer, viz.:

1. If the society has waived a strict compliance with its own rules and in pursuance of a request of the insured to change

the beneficiary has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued.

2. If it is beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been made.

3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary but before the new certificate is actually issued he dies, a court of equity will decree that to be done which ought to be done and act as though the certificate had been issued.

The first exception seems to be supported by the authorities with this qualification: If the member has failed to comply with the requirements of the by-laws regarding the change of beneficiaries, and the society *during his lifetime* waived the requirements not complied with, the former beneficiary cannot take advantage of such failure. See *Knights of Maccabees* v. *Sackett*, 34 Mont. 357, 86 Pac. 423, 115 Am. St. Rep. 532. It is clear that the exception to the rule must be subject to this qualification else it violates the prevailing rule, that the society can do nothing to effect the rights of the beneficiary that become vested upon the death of the member.

The second and third exceptions to the general rule are founded upon the same principle, viz.: that equity will treat that as done which ought to have been done. The cases falling within either of these exceptions turn upon some fact or set of facts that make it inequitable to apply the general rule to the particular case, as for example, when it is beyond the power of the member to comply with the requirements of the by-law through the fault of the society or the original beneficiary, or where the things required of the member have been done and the failure to perfect the change in the member's lifetime is due to the fault or neglect of another. In those circumstances equity may well regard those things done that should have been done. But we know of no case that goes to the extent of holding that equity will regard as done those essential things that are beyond the power of any one to do. Such a construction would make it necessary to treat as nugatory the stipulations in all beneficiary contracts designed to limit the time, with reference to the member's death, within which a change of beneficiary can

be effected. See Note, 15. L. R. A. 350. The general rule, with the possible exceptions referred to above, is calculated to safeguard the rights of the society, the member and the beneficiary —and should receive sanction, as it will at all times make it possible without difficulty to determine who is entitled to the benefit fund. It is simple, consistent and easily applied.

In the case at bar there is no basis for the application of the equitable rule and the contract in terms disposes of the claims of the new beneficiaries, in the absence of circumstances calling for equitable relief. The special features of the contract under consideration render an extended analysis of the cases unnecessary. The recent case of *Hughes* v. *Modern Woodmen of America,* decided by the Supreme Court of Minnesota in February, 1914, reported in 145 N. W. 387, deserves especial attention, as the contract there under consideration is identical with this and the case is directly in point. One Hyland was a beneficial member of the defendant society. His sister was named as beneficiary in the certificate and had possession thereof. Desiring to change his beneficiary and not having the certificate in his control, he executed, as the by-laws provided he might, a writing in which he stated that the certificate was beyond his control and therein appointed his daughter as a new beneficiary. This writing with the required fee was delivered to the local camp clerk to be forwarded to the head camp. Before the writing reached the head clerk Hyland died. Notice of his death reached the head clerk at the same time as the writing and a new certificate was not issued. The court held that, under the contract between John Hyland and the association, the old certificate remained in full force and effect, unless a new one was issued within his lifetime; that the request for the new certificate was not presented in time to reach the head clerk before his death; and that at his death the plaintiff (the sister) was still the beneficiary and her rights to the proceeds of the certificate then vested.

By the express provisions of this contract Headle agreed that the designation of a new beneficiary should not be effectual unless accomplished in his lifetime. Without fault of any one, he failed to exercise the power in the prescribed manner. As effect must be given to the contract made by the parties rather than to the belated intention of Headle to change the beneficiaries, it follows that the original certificate continued in force

and Lottie Headle is entitled to the fund as sole beneficiary. The case of *Fugure* v. *Mut. Soc. of St. Joseph,* 46 Vt. 362, is not in conflict with this conclusion. The benefit there contracted for was not a fixed amount payable on the death of the member but a weekly indemnity payable during the widowhood of the beneficiary. The by-laws of the society, with reference to which the member contracted provided for the possible change of the indemnity. This being so, the beneficiary did not have such a vested interest in future payments of the indemnity as would prevent the society from exercising the right reserved to change the indemnity, even after the member's death.

The result is we find no error in the decree of the court of chancery.

*Decree affirmed and cause remanded.*