W. A. NUNEMAKER, Appellee, v. IVA E. KULHAVY et al., Appel-
lees; GRANDE AVENUE LAND COMPANY, Appellant.

MECHANICS' LIENS: Priority—Purchase-Money Mortgage.  A mort-
1   gage on a lot for the purchase price thereof, given by the parties
thereto *in contemplation of and as part of a contract plan and scheme
for the improvement of the lot* by the erection by the purchaser of a
building thereon, is subject to the mechanics' lien growing out of the
subsequent erection of such building.

MECHANICS' LIENS: Priority—Mortgage to Secure Building Funds.
2   A mortgage on a lot, given and recorded prior to any contract for
the erection of a building on the lot, but executed for the express
purpose of providing the funds for such erection (the funds being
so employed), is prior in right to a mechanics' lien growing out of
the erection of such building.

MORTGAGES: Release—Substitution of New Mortgage.  The release
3   of a recorded real estate mortgage and the *instant substitution* of a
new mortgage for the *same debt,* together with an increased amount of
loan, do not work a loss of the original lien—at least to the amount
of the original note and mortgage.

*Appeal from Linn District Court.*—FERGUS L. ANDERSON, Judge.

FEBRUARY 5, 1924.

REHEARING DENIED APRIL 4, 1924:

ACTION in equity, to establish and foreclose claim for a
mechanics' lien, and to adjudicate the order of priority of cer-
tain mortgage liens in relation thereto.  The opinion sufficiently
states the facts and the findings of the trial court.  The plaintiff
and defendant land company appeal.—*Affirmed.*

*Stewart, Penningroth & Holmes,* for appellant.

*Johnson, Donnelly & Lynch,* for appellees.

DE GRAFF, J.—The issue presented on this appeal may be
briefly stated as follows:  Is plaintiff entitled to have his claim

for mechanics' lien established, and if so, what is the order of priority (1) as between plaintiff and a first-mortgage lien holder, and (2) as between plaintiff and a second-mortgage lien holder?

The trial court established the claim for a mechanics' lien on the real estate involved, and determined the priority: (1) the first mortgage lien, (2) the mechanics' lien, and (3) the second mortgage lien. In other words, plaintiff Nunemaker was unsuccessful in securing a judgment of priority of his claim for mechanics' lien to the first-mortgage lien of defendant Moray L. Eby, and the defendant Grande Avenue Land Company was unsuccessful in securing a judgment of priority of its second-mortgage lien to the claim of the plaintiff Nunemaker for his mechanics' lien. Both the plaintiff Nunemaker and the defendant Grande Avenue Land Company appeal.

The facts disclose that the Grande Avenue Land Company was the owner of an addition to the city of Cedar Rapids, known as "Ridgewood," and that, on October 9, 1919, the company entered into a contract with George W. Kulhavy for the sale to him of Lot 120 in said addition, for the sum of $1,500. A supplementary contract was entered into October 11, 1919, between said parties, which reads as follows:

"Party of the second part [Kulhavy] agrees to immediately commence the erection of a rockbond semi-bungalow approximately 26x36 feet with sun porch additional and two-car garage. Party of the second part will rush the house to completion as fast as consistent with good workmanship. The house and garage to cost not less than sixty-five hundred ($6,500.00) dollars, and to be of that value. Party of the first part is to furnish warranty deed to lot when required by party of the second part for loan purposes. When the deed is furnished party of the second part will execute and deliver a mortgage for the full amount of the lot running three years at 6 per cent interest, payable semiannually, which mortgage is to be subject only to a first mortgage by a building & loan association not exceeding the cost of the house."

Thereafter, and on February 18, 1920, a contract was entered into between the plaintiff Nunemaker, a contractor, and Iva E. Kulhavy, wife of George W. Kulhavy, as follows:

"Party of the first part [Kulhavy] agrees to furnish all

money for labor and material as the work progresses. Party of the second part [Nunemaker] agreeds to take charge of and see that all work is done in a good and workmanlike manner. Party of the second part to receive for his services the scale of wages for each and every day that he works on the house, also two hundred ($200.00) dollars as his commission when house is completed.''

Kulhavy testified that the plaintiff knew the terms and conditions of the contract of purchase of the real estate in question, and that the contract for the erection of the residence on said lot was entered into with full knowledge on the part of Nunemaker of its terms and conditions. This is denied by Nunemaker. It further appears that, pursuant to the contract of sale between the company and Kulhavy, a deed of conveyance was executed and delivered to him, and at the same time, and as a part of the same transaction, Kulhavy signed a note and mortgage for the purchase price of the lot, in accordance with the contract, and the deed and mortgage was filed for record November 28, 1919. It also appears that a mortgage was negotiated by the Kulhavys with a building and loan association, but was not consummated, for the reason that another loan was negotiated with Moray L. Eby (defendant first mortgagee) for $5,500, and the mortgage signed and recorded; but afterwards it was canceled and discharged of record by the said Eby, upon an agreement to increase the loan to $7,000, which was done, and a new mortgage executed and recorded on July 23, 1920. On the latter date, the original $1,500 purchase-money second mortgage was canceled and surrendered, and a new $1,500 mortgage and note executed in lieu thereof from the Kulhavys to the Grande Avenue Land Company, which substituted second mortgage was filed for record.

Plaintiff, in December, 1919, commenced the construction of the residence. Before plans and specifications were prepared, plaintiff made a rough estimate as to the cost of the house then contemplated, and fixed the cost from $8,000 to $8,500. No estimate was made upon the house that was planned and constructed, and its actual cost when completed was about $13,000. There is no evidence that the cost exceeded the fair and reasonable value of the building at the time of its construction, and

it included a garage in connection with the house. The $7,000 secured on the first mortgage by Kulhavy was used to pay plaintiff on the improvement. No other funds were furnished, and when Kulhavy ceased to furnish money to buy material and pay for the labor, plaintiff completed the job, and when completed, in September, 1920, there was a balance of $3,329 owing for labor and material furnished by plaintiff.

At the outset, it may be observed that the property owner Kulhavy has not appealed from the decree entered, and the decree must be considered as *res judicata* to him. Although the appellant Grande Avenue Land Company may not dispute the lien as established against the real estate, it is in a position to question the order of priority: that is, whether the establishment of the lien shall take precedence of its right and lien.

The only parties appearing or filing argument are Nunemaker, appellee and cross-petitioner, and the appellant Grande Avenue Land Company. The defendants Iva E. and George W. Kulhavy made no defense, and have not appealed. The contract between plaintiff and Kulhavy authorized the plaintiff, by implication at least, to purchase or furnish all of the material for the building. Whether it was contemplated that the material for the building would be purchased in the name of the plaintiff or in the name of the defendants is quite immaterial. We do not view the contract as one of agency. The plaintiff did purchase the material and furnish the labor for the construction. After the defendants defaulted in their payments, plaintiff paid for the labor and for most of the material out of his own funds. He completed the job that was within the contemplation of the parties. The relationship of the parties is not changed by the fact that he did not pay for quite all of the material, and this point is not stressed by appellants. Plaintiff did testify that, after the written contract was executed, the defendant George Kulhavy told him to go ahead, furnish the material, and build the house, and that he would advance all the money to pay therefor. There is no question that the material was purchased and used upon the premises in the erection of the house with the full knowledge and acquiescence of the Kulhavys, who later accepted and occupied the residence. There was a sufficient promise on the part of the defendants to pay for the material,

and clearly the Kulhavys could not have successfully defended against plaintiff's claimed mechanics' lien on the ground that the plaintiff did not furnish the various items of labor and materials shown in the filed statement. We have no hesitation in holding that plaintiff's right to a mechanics' lien existed, and the decree of the trial court in establishing said lien is justified.

The question, therefore, between plaintiff and the Grande Avenue Land Company, and between plaintiff and Eby, as first mortgagee, is one of priority only. The Grande Avenue

1. MECHANICS' LIENS: priority: purchase-money mortgage.

Land Company was engaged in selling lots in its addition, and the contract of sale in the instant case provided that the vendee, Kulhavy, would erect a residence on the lot, at a minimum cost of $6,500. The land company agreed to accept a second mortgage for the purchase price, and for the express purpose of permitting the purchaser to secure a loan to erect a contemplated residence. The land company was primarily interested in building up its addition, and the restriction found in the contract indicates a somewhat exclusive character of the addition and the residences to be constructed. The second mortgage, given to secure the purchase price, necessarily would include the improvements to be placed upon the premises, and the agreement intended to make the purchase-mortgage lien junior and inferior to whatever incumbrances it was necessary for the defendant to place upon the premises to secure funds for the erection and completion of the contemplated and required improvements. The final cost thereof exceeded the initial mathematics of the case, but with this matter we are not concerned. The land company had an interest in the erection and completion of the improvements, and the undertaking was in the nature of a joint enterprise. Under such circumstances it is clear that the lien of the purchase-money mortgage is inferior to the plaintiff's mechanics' lien. *Janes v. Osborne*, 108 Iowa 409; *Denniston & Partridge Co. v. Brown*, 183 Iowa 398.

What claim has the Eby mortgage to priority over plaintiff's mechanics' lien? The original Eby mortgage was in the sum of $5,500, and was executed prior to the contract between

plaintiff and Kulhavys. Plaintiff's right to a
lien dates from the beginning of his work. *Kiene
v. Hodge,* 90 Iowa 212; *Bartlett & Norton v.
Bilger,* 92 Iowa 732.

2. MECHANICS'
LIENS: priority:
mortgage to se-
cure building
funds.

During the progress of the work for which plaintiff was
furnishing material and labor, the $5,500 note was surrendered
and the mortgage was discharged of record, and at the same
time the loan was increased to $7,000 by the
same party, and a new note and mortgage was
executed, and the mortgage was promptly re-
corded. No mere change in the form of the indebtedness has
the effect to discharge the mortgage security. *Foster v. Paine,*
63 Iowa 85; *Hoffman v. Wilhelm,* 68 Iowa 510; *Gribben v. Clem-
ent,* 141 Iowa 144. Nothing short of payment, with express re-
lease, would have that effect. *Port v. Robbins,* 35 Iowa 208;
*Sloan v. Rice,* 41 Iowa 465. Nor does the taking of a new mort-
gage for the same debt operate to release the first mortgage so
as to let in intervening liens. *St. Croix Lbr. Co. v. Davis,* 105
Iowa 27; *Thorpe Bros. v. Durbon,* 45 Iowa 192. The question,
therefore, upon plaintiff's appeal is: Did the execution of a
new note in place of the $5,500 note for an increased amount,
and the release and discharge of the old mortgage, operate as
payment of the original indebtedness and to discharge the lien
of the original mortgage?

3. MORTGAGES:
release: substi-
tution of new
mortgage.

Under the circumstances of this case, the legal effect of the
release of the first and the substitution of a new mortgage did
not result in the cancellation of the original lien, at least to the
amount of the original note and mortgage. It is apparent that,
the purpose of releasing the original mortgage was to provide
for the amount of the loan as increased. It was not the inten-
tion of the parties to release the lien, but to substitute a new
mortgage, for the purpose of carrying out and preserving such
lien and to cover an additional loan. This did not operate to the
prejudice of plaintiff, since the evidence shows without dispute
that the full amount of the loan was paid to the plaintiff, and
applied by him under the terms of his contract. Plaintiff se-
cured the full benefit of this mortgage, and we discover no
equitable reason why he should be permitted to receive the
benefit thereof a second time.

We therefore hold that the conclusions announced by the trial court are correct, and the judgment and decree entered in all particulars is—*Affirmed.*

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.