LOVELL-SCHOLFIELD LUMBER COMPANY et al., Appellees, v. ROY W. CARTER et al., Appellees; S. H. CALLAWAY, Appellant.

S. H. CALLAWAY, Appellant, v. ROY W. CARTER et al., Appellees.

**MECHANICS' LIENS:** Taking Note—Effect. One who furnishes material for an improvement on real estate, and later takes the debtor's note therefor and negotiates it, and is compelled to take the note up at maturity, may then proceed to file his mechanics' lien.

**MECHANICS' LIENS:** Belated Filing—Priority Over Mortgage. A mechanics' lien filed by a principal contractor long *after* the expira-

tion of 90 days from the date of the last item of the account, but *before* the expiration of two years and nine months from the date of said last item, is prior in right to a mortgage on the premises taken *after* said 90 days and *before* the filing of the lien, when it is made to appear that the mortgagee's agent, when he obtained the mortgage, knew *that the materialman in question had furnished material for specific improvements on the premises and that he had not been paid.*

**PRINCIPAL AND AGENT:** Agent's Knowledge Imputed to Principal.
3  Knowledge acquired by an agent in the course and scope of his agency is *imputed* to his principal, even though never *communicated* to his principal.

STEVENS and FAVILLE, JJ., dissent, on the ground that the present record presents no sufficient facts for the application of the principle.

**MECHANICS' LIENS:** Belated Filing—Subsequent Incumbrancer—
4  **Security For Pre-Existing Debt.** A mortgage executed on no consideration except as security for a *pre-existing* indebtedness, even though executed long after the expiration of the 90 days provided by statute for the ordinary filing of a mechanics' lien, is subordinate in right to a mechanics' lien already existing, and later filed, prior to the expiration of two years and nine months from the date of the last item of the account.

**EQUITY:** Considering That Done Which Ought to Have Been Done.
5  Equity cannot consider a mortgage as executed on the date when a note was given, when the record shows that no security was agreed on when the note was given, and that the actual execution of the mortgage was a subsequent and independent transaction.

*Appeal from Hardin District Court.*—R. M. WRIGHT, Judge.

JUNE 28, 1924.

THE contest is between the mortgagee and the mechanics' lien holders. In the first case, plaintiffs brought an action to foreclose a mechanics' lien against the owner of land, making appellant, mortgagee, a party, and claiming a superior lien over the mortgage. Thereafter, appellant brought an action to foreclose. The cases have been consolidated. The trial court found against the mortgagee, and he appeals.—*Affirmed.*

*Aymer D. Davis,* for appellant.

*Lundy, Peisen & Soper,* for appellees.

PRESTON, J.—The issues presented are largely questions of fact. It being so, we shall not go into the details of the evidence more than seems necessary. The ultimate issue is whether the two mechanics' lien claimants have liens superior to that of the appellant's mortgage. This involves other issues, which, boiled down, are whether they are entitled to mechanics' liens on the premises, and as to the first claim, what should be considered the last item in the account; whether appellant is a subsequent mortgagee in good faith and without notice; and whether notice to Reynolds as agent is notice to appellant.

Material was furnished by the lumber company for a house, garage, chicken house, and silo chute, and by the hardware company for plumbing and water heater. The Lovell Company also furnished lumber and material in the sum of about $2,500 for a barn on the place, which was first built; but a note was given therefor, and that has been paid, and is now out of the case. The trial court found that the items going to make up the house account constituted, in fact, a separate account, and that the last item in said account was under date of March 6, 1920, when there was a net balance due on account thereof of $2,201.61; that, on that date, Carter gave the lumber company a note for $2,392.49, the difference going as a credit on account of merchandise not going into the house, and a small payment of interest; that, on April 23, 1921, Carter paid $790 on this account, leaving a balance, with interest, of $1,586. The court decreed that the lumber company's lien for this account was superior to the lien of the hardware company and of the appellant. It also found that the last item furnished on the *other* improvements going upon the 80 was furnished under date of May 24, 1921, and that at that time there was a balance due and owing of $1,570.83, on which the lumber company is entitled to interest; that the total amount due the lumber company was $3,243.24; that the lumber company has a lien upon the real estate described, which is superior to rights and claims of any other of the parties involved in these cases. It also finds that appellant was not an innocent mortgagee for value, at the time he secured his mortgage, and that he secured no lien superior to the liens of the Lovell Company and the Larson Company; that appellant had knowledge of the in-

debtedness due from Carter to the lumber company and that said indebtedness was unpaid, and was for lumber and material which had gone upon the permanent improvements upon said real estate, and knew the same at and prior to the time of taking his mortgage. It also finds that the Larson Company had two separate accounts with the owner, and that on the first there is a balance due of $60, with interest, and on the second, $52.05, the last item of said account being under date of August 11, 1920,— total due the company, as of the date of the decree, $124.64, with interest. It also found that the equities are with the lumber company and the hardware company, and entered decree accordingly.

Defendant Roy W. Carter is the owner of the 80 acres of land, and Pearl Carter is his wife. The Lovell Company is engaged in the lumber business at Union, Hardin County, and the Larson Company is located at Eldora.

D. D. Reynolds is vice president of the Union Savings Bank, and had exclusive charge of loaning all money. Appellant was a customer of the bank, and had money on deposit. On March 1, 1920, Reynolds loaned Carter $20,000, for Callaway.. It was in three notes, and unsecured. Under the evidence, Reynolds was acting as agent for appellant originally, and in reference to subsequent transactions in regard to the loan,—both Reynolds and appellant so testify. Reynolds testifies, in part, that neither he nor the bank has any interest in the 80, either as lien holder or otherwise; that his connection with the transactions relating to the 80 is the loan which was made to Mr. Carter by appellant; that it was made through his personal action,—that is, as he says:

"I represented Mr. Callaway in a personal capacity, as his agent in handling the transaction. The mortgage was made in my favor, as an individual, and the note; the reason for that being that Mr. Callaway expressed to me the desire not to be publicly known in the transaction, for reasons of his own, I suppose. I had no interest in the loan; neither did the bank. In loaning this money to Mr. Carter and taking the mortgage and note, I was acting for Mr. Callaway."

Appellant testified:

"I did not personally superintend the loan or looking after the loaning of this $20,000. Mr. Reynolds did that."

The note and mortgage were made to Reynolds, who assigned them to appellant. On March 1, 1921, Carter did not know to whom the money belonged. Carter was becoming somewhat involved financially. There was a prior mortgage of $14,000 on his land. Reynolds, or his bank, at about that time was unwilling to take any more of Carter's paper. Carter was unable to pay the notes, and was told by Reynolds that his principal would either want part of the money or security of some kind. Reynolds told Carter that, if the latter could pay part of the note, he thought he would take care of the rest of it for a while. The notes were put into one, and renewed. Carter signed the one note on March 1, 1921, and the loan was at that time extended for two years. Upon the execution of the one note, the old notes were surrendered to Carter, at which time he was told by Reynolds that his client would want some cash or some kind of security. Thereafter, and on June 1, 1921, Carter and his wife executed a mortgage, and it was recorded the next day. Reynolds says that the delay in executing the mortgage was due to his own neglect. The mortgage was on the 80 acres of land in question, which included the homestead of the Carters. Reynolds first suggested a mortgage on the 80 about May first, according to Carter. Carter first spoke to his wife about the mortgage about a week before it was signed. Reynold's memory is not clear about this, and says that he may have prepared the mortgage about the time Carter signed it. He testifies further:

"I do not believe I had talked with Mrs. Carter prior to the time that she signed the mortgage. I sent the notary down to her home to get the mortgage signed and acknowledged on June 1. * * * I am a graduate of a law department. I knew that this real estate constituted the Carters' homestead on March 1, 1921. I knew that a mortgage not signed by the wife was void; that it was not in legal existence until signed by Carter and his wife. The renewal of the note was conditioned upon the giving of security."

The materials for the so-called house account amounted,

on March 6, 1920, to $2,201.61. The account began July 30, 1919. The last charge in 1919 is on December 19th, and the first charge in 1920 is on February 10th. This is not such a hiatus as to prevent the last item in the account from being on March 6th, even though a note was given for part of the account. Even though a note was given, still a mechanics' lien may be claimed. The note was negotiated, with recourse, to the Reynolds bank, was later taken up by the Lovell Company, and remains unpaid. Thereafter, the plaintiff lumber company filed its mechanics' lien. Other materials for the garage, etc., were furnished between November 15, 1919, and November 24, 1920. Carter's note was taken therefor in February, 1921. For all said materials the Lovell Company filed its mechanics' lien on October 21, 1921, in the clerk's office in Hardin County. Thereafter, and on October 26, 1921, the Lovell Company filed another lien statement, which it denominated amendment to mechanics' lien for materials sold Carter for the 80 acres, in the sum of about $75, which materials were furnished between February 14, 1921, and May 24, 1921. The continuity of this account from November 24, 1920, to February 14, 1921, is shown by the fact that the larger part of the claim was for cement used as a floor in the chicken house, which contained materials previously furnished. The delay was caused because, as Carter says, he could not get cement for the foundation under the chicken house, and they were in a hurry to use the chicken house, and did so before they put the foundation in; so they did not run the foundation under the chicken house until February. The job was not completed on November 24th. *Chase v. Garver Coal Co.,* 90 Iowa 25.

The Larson Company's account is made up of two separate jobs: the first $60, for a balance due on a job completed January 5, 1920, and the other, $52.40, being completed on August 11th of that year. The company filed its lien November 15, 1921.

1. We ought not to, and shall not, take very much time in discussing the proposition as to whether, as against the landowner, Carter, plaintiffs were entitled to a lien. The statute, Section 3089, Code, 1897, provides that every person who shall furnish any materials for any building or other improvement

upon land shall have a lien upon such building or improvement and upon the land. The landowner does not contest plaintiffs' right in this regard, and has not appealed. One of appellant's points is that, if a materialman sells materials on the personal credit of the owner,—such, for instance, as for the purpose of use in the ordinary course of trade, or to place the materials in stock, etc.,—and without any understanding as to their application, he can assert no lien upon the building upon which they may be used, as he relies exclusively upon the credit of the buyer, without any understanding. as to the application of the materials. Appellant cites 18 Ruling Case Law 922; *Stewart & Co. v. Whicher,* 168 Iowa 269; *Coates & Davis v. Shorey,* 8 Iowa 415; and like cases. That is not the situation here. The undisputed evidence is that the merchandise was sold especially for the improvement of the 80 acres, and that it was so understood by all the parties. This may be shown circumstantially, and it has been held that the contract need not be in writing. *Coates & Davis v. Shorey,* supra, at page 418. There is no evidence that Carter purchased the materials for any other purpose. Under the evidence, plaintiffs come within the statute. They filed their liens within the statutory period of two years, and ninety days from the date of the last item of their accounts. The mechanics' lien, when filed, relates back to the commencement of the work, and has priority over mortgages executed under the circumstances enumerated in the statute. *Neilson v. Iowa Eastern R. Co.,* 44 Iowa 71; *Gilbert, Hedge & Co. v. Tharp,* 72 Iowa 714; *Lee & Jameson v. Hoyt,* 101 Iowa 101. See, also, *Milligan v. Zeller,* 197 Iowa 79; *Nunemaker v. Kulhavy,* 197 Iowa 962.

2. It is further contended by appellant that the taking of Carter's note by the plaintiff Lovell Company, and the fact that at that time the manager of the company considered Carter financially responsible, and took no steps to enforce the lien until after the company was compelled to take up the note, show that the lumber company, in taking the note, intended thereby to waive its lien. There appears to be no waiver or estoppel pleaded, and appellees contend that this is necessary. *State Bank v. Brown,* 142 Iowa 190. Appellees cite *Ford v. Ott,* 186 Iowa 820, at 830, to

1. MECHANICS' LIENS: taking note: effect.

the proposition that the waiver of a right can be claimed only when one acts, knowing all the facts, and does something which creates an estoppel. It does not appear that the plaintiffs knew of the $20,000 loan to Carter until appellant's mortgage was filed. Appellant told Reynolds that he did not wish it known. Appellees say that, had they known of that fact, they would have filed their liens within the 90 days. There is no evidence that plaintiffs did not intend to file their liens, as appellant contends. In the *Whicher* case, supra, it was supposed that decedent was financially responsible, and the lien was not filed until after his death, and until after it was learned that such was not the fact. The lien was established. In *German Bank v. Schloth,* 59 Iowa 316, it is held that the taking of the note does not destroy the right to file the lien, nor does its negotiation; and that, upon the payee's taking it up, he may proceed to file and enforce his lien.

3. Coming now to the question which we regard as the vital point in the case. The statute, Section 3092, Code, 1897, fixes the time within which liens must be filed with the clerk,— 30 and 90 days,—and then says:

2. MECHANICS' LIENS: belated filing: priority over mortgage.

"But a failure to file the same within said periods shall not defeat the lien, except against purchasers or incumbrances in good faith, without notice, whose rights accrued after the 30 or 90 days, as the case may be, and before any claim for the lien was filed."

Plaintiffs' liens were not filed within the 90 days, and not until after the execution and recording of appellant's mortgage. It is alleged by appellant in his foreclosure case that the mechanics' lien claims were junior and inferior to the lien of his mortgage; while appellees say that the mortgage is inferior. There is some controversy between the parties as to who has the burden of proof on the question as to whether appellant is an incumbrancer in good faith, without notice. Without discussion of the cases, it is enough to say that we are of opinion that the weight of the evidence is with the appellees on this proposition, as found by the trial court.

It is necessary to refer to further testimony in the record in regard to the agency of Reynolds for appellant, and circum-

stances tending to show notice. We understand appellant to concede that actual notice means either actual notice or knowledge of such facts as would put an ordinary person upon inquiry, which, if followed up, would have led to the discovery of equity or incumbrance. See *Ross v. Chicago, R. I. & P. R. Co.,* 55 Iowa 691, 694. Appellant cites on this proposition *Walter v. Brown,* 115 Iowa 360, 362; *Block & Pollak Iron Co. v. Holcomb-Brown Iron Co.,* 105 Iowa 624, 627; and other cases, as so holding. It is true that appellant and Reynolds make the general statement that they had no knowledge or notice of the claims of appellees. It is not claimed that Reynolds knew about the hardware company's bill, and it is contended by it that the test of whether appellant's mortgage lien is superior to its lien depends upon whether the appellant is to be considered a subsequent mortgagee for value. Appellee lumber company contends that, as to it, appellant must be both a subsequent mortgagee for value and without notice.

3. PRINCIPAL AND AGENT: agent's knowledge imputed to principal.

Taking up first the claim of the lumber company that appellant had notice of its claim, we shall take up and review some of the circumstances tending to establish notice. Union is a small town of about 650 people. The lumber company is located about four blocks from the Reynolds bank, and in hauling lumber to Carter's place, they would pass the bank. The 80-acre tract is about six or seven blocks south from the bank. Reynolds testifies:

"I knew of Carter building the big barn; knew of his building the house; knew that lumber and building material was all the Lovell Company had to sell, and I shouldn't think that they would have his note for any other things; and I knew, when the Lovell people presented a note to me for purchase, with Roy Carter's signature, that it was for lumber and building material; knew that, just prior to March 9, 1920, he had been making improvements on the 80. I knew of his building the henhouse. The Lovell Company is the only firm handling lumber in Union. It is a customer at our bank. Mr. Heryford [the Lovell manager at Union] is a personal friend of mine. Having charge of credits and loans made in the bank, I, as a banker, know the

business transactions being conducted and handled, to a greater or less extent, by our customers. I do not want the court to understand that, when this $2,392.49 note was presented to me originally for sale by the Lovell Company, bearing the signature of Roy Carter, that I didn't know it was for lumber furnished for his house. That would be a very natural supposition. I knew that; yes, sir, I knew that. Do not know when the house and barn were constructed. I did know of his building the house, at the time the house was built; knew that Carter had made substantial improvements on the 80 acres; and I knew that he was not making substantial improvements anywhere else at that time. * * * I knew Carter was building these improvements on the 80 south of town. I would estimate the improvements in the neighborhood of $15,000.''

The bank owned the $2,390 Carter note on March 1st, at the time the renewal notes were given. This note was renewed in January, 1921. It was originally sold to the bank by the manager of the lumber company, March 6 or 9, 1920, who testifies that at that time he told Reynolds that he had between $1,200 and $1,500 on the garage and chicken house against Carter, and asked if the bank would buy it if he could get a note from Carter; and Reynolds said he didn't want it. He also told Reynolds that the $2,390 note was for material that went into the house, and that his company is the only company in that territory selling lumber. Reynolds says that he remembered talking about purchasing another Carter note, and that he told the manager he didn't 'want any more Carter paper; but he would not testify that the manager did not tell him that Carter owed for lumber that went into the henhouse and garage. Reynolds had charge of the entire matter from the beginning. According to plaintiffs' theory, Reynolds was to look after the security. There was some duty resting upon Reynolds to look after the character of the security and the liens.

It seems quite clear that the trial court rightly found that the mortgagee, through his agent, Reynolds, had notice of the claim of the lumber company, and that such notice covered all the claims of the lumber company, and that the mortgagee knew that the company had furnished material and that it had not

been paid for. This was within the scope of the agency. Under the authorities, notice to Reynolds was notice to his principal. *Crumb v. Davis,* 54 Iowa 25; *Smith v. Dunton,* 42 Iowa 48; *Mankin v. Mankin,* 91 Iowa 406; *Ross v. Chicago, R. I. & P. R. Co.,* 55 Iowa 691, 694; *Sowler v. Day,* 58 Iowa 252; *Shoemake v. Smith,* 80 Iowa 655; *McClelland v. Saul,* 113 Iowa 208; L. R. A. 1918 B 929.

At prior times, Reynolds had secured for Carter the $14,000 mortgage and a loan at the bank; but, under the evidence as to this transaction, there was no dual agency on the part of Reynolds for both appellant and Carter, so as to prevent the notice to Reynolds from being imputed to appellant. *Crumb v. Davis,* supra. See, also, *Donaldson v. Kenegy,* 197 Iowa 893, as having a bearing on this question. Appellant cites *Watt v. German Sav. Bank,* 183 Iowa 346; *Hummel v. Bank of Monroe,* 75 Iowa 689, and other cases; but they were cases where the allegiance of the agent was conflicting, or where the agent committed a fraud.

Having this knowledge, appellant should know that plaintiffs had a lien, and the right, as between them and Carter, to file their liens even after 90 days. This being so, and appellant having notice thereof, he is not a subsequent incumbrancer in good faith, without notice. *Lee & Jameson v. Hoyt,* 101 Iowa 101, 106.

4. Another question presented is as to whether appellant is a mortgagee in good faith and for value, and protected under Section 3092 of the Code. This involves the question as to whether appellant's mortgage is of date of March 1st or June 1st. Appellant pleaded his mortgage as one of March 1st, and prayed that his lien be established as of that date. If of that date, the mortgage would be within the 90-day period on the job other than the house account. In appellant's original argument, he abandons that theory, and concedes that the mortgage was June 1st. It is appellees' thought that this is the reason for the change of position. If the mortgage is to be considered as of June 1st, then it must appear that appellant was an incumbrancer in good faith and without notice.

*(margin note: 4. MECHANICS' LIENS: belated filing: subsequent incumbrancer: security for pre-existing debt.)*

But in the reply argument, appellant raises another question, which will be considered later: that equity regards that as done which ought to be done, and that, therefore, his mortgage should be considered as of March 1st.  It is the contention of appellees that, for several reasons, there was no mortgage until June 1st, and that appellant is not a good-faith incumbrancer without notice, because the indebtedness secured by appellant's mortgage was a pre-existing indebtedness; and that the extension was made and agreed upon March 1st, when the old notes were surrendered and new note given; and that this was prior to the execution of appellant's mortgage.

We think there was no mortgage or no lien on behalf of appellant until June 1st.  While the evidence shows that there was some talk on March 1st about payment or security, or that, if part of the note was paid, it would be carried, there is no evidence of any agreement between appellant and Carter that he should give a mortgage on this particular 80 or that he should give security.  Especially is this true as to the wife, who was not asked to give a mortgage on the homestead until about the time it was executed, June 1st.  The debt had been renewed, the extension made, and the old notes surrendered, March 1st.  Clearly, then, it was a pre-existing debt at the time the mortgage was given, and there was no new consideration or any extension of time granted on the indebtedness at the time the mortgage was given.  This being so, appellant is not a good-faith purchaser, and is not protected by the statute.  *Walker v. Abbey,* 77 Iowa 702, 705; *Cambria Sav. Bank v. La Nier,* 135 Iowa 280; *Senneff v. Brackey,* 165 Iowa 525; *Phelps v. Feckler,* 61 Iowa 340, 341; 39 Cyc. 1697.

5.  Finally, as to the proposition raised by appellant in the reply argument:  While it is true that Reynolds, in one part of his testimony, says that the note and mortgage were drawn at the same time, and that there was an agreement on March 1st with Carter that Carter and his wife would give a mortgage on this 80 acres, we have seen that such is not the fact.  The evidence, practically undisputed, is that it was not signed until June 1st, and Carter's wife knew nothing of it until about that time, or a few

5. EQUITY: considering that done which ought to have been done.

days before. Carter's evidence is clear on that proposition, and Reynolds admits that his memory is faulty, and that he would not dispute Carter's testimony. The giving of the note and the signing of the mortgage were not one transaction, as of March 1st, as contended by appellant. Under all the evidence and circumstances of this case, there is no basis for applying the maxim that equity regards as done that which ought to have been done. Furthermore, there are numerous well defined exceptions or limitations to the rule. The maxim is applied for the purpose of doing equity between the parties. 21 Corpus Juris 201. Whatever appellant's right might be, as between him and Carter, as to the date of the note, would not apply to plaintiffs. They have intervening rights and equities. Again, it is said at 21 Corpus Juris 201, the maxim affords no grounds for the enforcement in equity of an invalid contract. The alleged agreement for mortgage, even if shown to have been made, was invalid, since it was not signed by the wife; and Reynolds concedes that he knew that fact. There is no pretense that there was any such agreement with the wife, and it seems to be the rule that equity will not regard as done a thing that the person agreeing could not himself alone have done. *Modern Woodmen v. Headle*, 88 Vt. 37 (90 Atl. 893, L. R. A. 1915 A 580, 589). Without any prolonging of the discussion, see, as having more or less bearing on this proposition, *Ball v. Keokuk & N. W. R. Co.*, 62 Iowa 751, 755; 21 Corpus Juris 201 generally.

Other questions, which we consider of minor importance, are argued. There may be other circumstances in the record not mentioned in detail. To do so would unduly prolong the opinion. The case has been fully considered, and we reach the conclusion that the decree of the trial court was in accordance with the facts and the law, and that the decree is right.— *Affirmed.*

ARTHUR, C. J., EVANS and VERMILION, JJ., concur.

STEVENS and FAVILLE, JJ., dissent.

FAVILLE, J. (dissenting). I cannot concur in the result announced by the majority. As I read the record, Reynolds was

the agent of Callaway, with a limited authority only. Callaway simply authorized Reynolds to take security for him for the note which Carter owed Callaway. Under such limited author- ity, I do not think that notice to Reynolds that Carter was building some buildings on his farm was binding on Callaway and rendered his mortgage junior to the mechanics' lien filed after the 90 days had expired. There was no notice to Reynolds in connection with his agency that was binding on his principal, Callaway. Under the rule of the majority, a party cannot safely employ anyone to take security for him without being bound by all knowledge that may come to his agent, even though the agent was not employed to pass on the security, and had no authority whatever in relation thereto except to accept the same. To this I cannot subscribe.

STEVENS, J., joins in this dissent.