MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2013 ME 39
Docket:      Cum-12-314
Argued:      January 15, 2013
Decided:     April 2, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR,
             JJ.


ROBERT FLAHERTY et al.

v.

HELEN MUTHER et al.


ALEXANDER, J.

[¶1] Helen Muther, Paul Woods, and the Buffett Coastal Trust appeal from a judgment of the Superior Court (Cumberland County, *Warren, J.*) concluding that they unreasonably interfered with the easement rights of Robert Flaherty and other members of their subdivision (the J-Lot owners) by installing video surveillance cameras on an easement crossing their property to provide access to a beach. Muther and Woods contend that the J-Lot owners lacked standing to rely on a 2006 settlement to support their position and that the J-Lot owners waived their capacity to contest this appeal or are estopped from doing so. Muther and Woods also assert that the trial court erred as a matter of fact and of law in concluding that their video surveillance cameras constitute an unreasonable interference with the easement.

2

[¶2]   Because the record does not support the conclusion that the video cameras unreasonably interfere with the access easement possessed by the J-Lot owners, we vacate the judgment.

## I. CASE HISTORY

[¶3]   Since 2004, Muther and Woods have owned oceanfront property in a Cape Elizabeth subdivision known as the J-Lot, and addressed by our opinion in *Flaherty v. Muther*, 2011 ME 32, ¶¶ 5, 7, 17 A.3d 640.  A 1970 subdivision plan designates the Muther-Woods property as Lot J-46, and each J-Lot owner holds a twenty-foot-wide walkway easement by implication over Lot J-46 to a shore area known as Secret Beach.  *Id.*

[¶4]   In 2005, Muther and Woods brought suit against the Broad Cove Shore Association and its directors.  *Id.* ¶ 13.  The Association is a nonprofit association of 243 homeowners within seven subdivisions in Cape Elizabeth—including the J-Lot subdivision.  *Id.* ¶ 8.  The suit sought to bar Association members from using the easement, but did not challenge the easement rights of J-Lot owners.  *Id.* ¶ 13. Some J-Lot owners are members of the Association, but others are not.  *Id.* ¶ 8.  In 2006, Woods, Muther, and the Association reached a settlement that temporarily ended litigation among the parties.[1]  *Id.* ¶¶ 15, 18.

---

[1]   The parties orally stated the terms of the 2006 settlement on the trial court record, but never reduced that agreement to writing.  *Flaherty v. Muther*, 2011 ME 32, ¶¶ 16-17, 17 A.3d 640.  However, subsequent litigation resulted in a final judgment that those terms, as stated orally in the trial court record,

[¶5]   As authorized by the settlement, Muther and Woods installed a fence and locking gate across the entrance to the easement. *Id.* ¶¶ 16, 19.  The agreement provides for an electronic key card system that allows cardholders—including Association members and J-Lot owners—ingress and egress through the gate.  *Id.* ¶¶ 16, 19.  Association members have limited access to the easement from fifteen minutes before sunrise until 9:00 a.m., and full access from 9:00 a.m. until sunset, during which time Association members may not hold a gathering of more than ten people, or eight adults and five children.

[¶6]   The settlement also includes a nondisturbance clause, prohibiting Association members from being "loud" or "obnoxious" in accessing the easement or shore, and further indicating, as described orally in the trial court record, that "there's been a lot of controversy with respect to particularly Mr. Woods'[s] approach to various easement holders and that . . . nondisturbance includes the fact that peaceful users of the access are not gonna be photographed, approached, or questioned while they're enjoying the easement."

[¶7]   Although not expressly authorized by the settlement, Muther and Woods installed two video surveillance cameras at the entrance to the easement. *Id.* ¶ 19.  In response to the installation of the gate and cameras, several J-Lot owners filed an action for a declaratory judgment and to enjoin Muther and Woods

constituted a binding settlement.  *Id.* ¶¶ 17-18.  The relevant terms of the settlement agreement quoted in this opinion are as stated orally in the trial court in 2006.

from obstructing their easement rights. *Id.* ¶ 20. Two groups of J-Lot owners moved for a summary judgment that they were not bound by the terms of the 2006 settlement because they had not been parties to that agreement. *Id.* ¶ 21. We affirmed the trial court's (*Crowley, J.*) subsequent decision, concluding that the court did not err in determining that the J-Lot owners were not bound by the 2006 settlement because Muther and Woods had not established a prima facia case that privity existed between the Association and the J-Lot owners. *Id.* ¶¶ 3, 36.

[¶8] Addressing the scope of the easement, we determined that, unlike Association members, J-Lot owners can access the easement at any time and that J-Lot owners could bring a reasonable number of guests with them over the easement. *Id.* ¶ 61. With regard to the reasonableness of the gate, we vacated the trial court's judgment that the gate placed an unreasonable restriction on the J-Lot owners' use of the easement. *Id.* ¶¶ 71, 90. We noted that, because the 2006 settlement agreement provided for construction of the gate, the trial court's determination that the gate unreasonably interfered with the easement rights of the J-Lot owners meant that Muther and Woods could not possibly comply with both mandates. *Id.* ¶ 67. By not considering the effect of the 2006 settlement, we concluded that the trial court's reasonableness determination was "unduly narrow." *Id.* ¶ 69. Therefore, "[e]vidence related to the settlement agreement and the J-Lot owners' awareness of its terms was relevant to determining the reasonableness of

the gate and the cameras, and the court abused its discretion in excluding that evidence at trial." *Id.* We evaluated the reasonableness of the gate in light of the burden it placed on the J-Lot owners, weighed against Muther and Woods's obligations under the 2006 settlement agreement and their right to exclude trespassers, concluding "as a matter of law that the gate does not unreasonably interfere with the dominant estate's use of the easement." *Id.* ¶ 71.

> [¶9] Addressing the cameras, we determined that

> although any psychological impediment created by the cameras may be modest given the prevalence of video surveillance in contemporary society, the reasonableness of the cameras [could not] be determined without an understanding of the extent to which the nondisturbance clause of the settlement agreement prohibits Muther and Woods from photographing users of the easement.

*Id.* ¶ 72. Accordingly, we remanded the case for further consideration of whether the cameras placed an unreasonable restriction on the easement rights of the J-Lot owners. *Id.* ¶ 72 & n.13.

[¶10] On remand, the Superior Court (*Mills, J.*) ordered the parties to brief the issue. The parties did not submit additional evidence, instead choosing to rely on the existing record. In response to the order for briefing, two groups of J-Lot owners submitted two separate memoranda—one arguing that the cameras unreasonably interfered with the rights of J-Lot owners, and the other contesting the gate but not the cameras. Several J-Lot owners that were plaintiffs or third-party defendants did not respond to the court's request for briefing.

6

[¶11]  In a May 7, 2012, judgment, the court (*Warren, J.*) concluded, "the presence of surveillance cameras will unreasonably interfere with the J-Lot owners' use of the easement."  The court cited the following facts, which it considered in arriving at its conclusion: Woods had previously taken photographs of and confronted individuals using the easement; some J-Lot owners were frightened by these episodes, which deterred them from exercising their rights under the easement; J-Lot owners expressed concern about the need for the cameras; installation of the cameras was not expressly contemplated by the 2006 settlement; and the 2006 settlement contained a "nondisturbance clause" indicating the parties' expectation that "peaceful users of the access" would not be "photographed, approached, or questioned while they're using the easement."

[¶12]  Muther and Woods filed a motion for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b), which the court denied.  Muther and Woods timely appealed.

## II.  LEGAL ANALYSIS

### A.    Standing, Waiver, and Estoppel

[¶13]  Muther and Woods challenge the J-Lot owners' standing to claim rights under the 2006 settlement involving Muther, Woods, and the Association. In determining whether the cameras unreasonably interfere with the easement rights of J-Lot owners, it was necessary for the trial court to weigh the competing

interests in the easement, including the easement rights that the J-Lot owners acquired by implication as provided by the 1970 subdivision plan, Muther and Woods's interest in protecting their property from trespassers and overburdening of the easement, and Muther and Woods's obligations to non-J-Lot easement holders pursuant to the 2006 settlement. *See Flaherty*, 2011 ME 32, ¶¶ 69-71, 17 A.3d 640. For this reason, we previously determined that the 2006 settlement was relevant evidence of the reasonableness of the cameras, although it is not binding as between the parties to this suit. *See id.* ¶¶ 35, 69.

[¶14] The J-Lot owners are not seeking to enforce rights pursuant to the 2006 settlement, but, as we stated previously, the extent to which the nondisturbance clause of the settlement prohibits Muther and Woods from photographing users of the easement is relevant to the reasonableness of the cameras. *Id.* ¶ 72.

[¶15] An examination of the merits of the waiver and estoppel arguments reveals that the trial court properly declined to accept Muther and Woods's arguments on these issues.[2] *See* M.R. Civ. P. 41(b); *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶¶ 26-27, 980 A.2d 1270. Regardless of whether some of the parties to this action lacked standing to enforce the terms of the 2006 settlement,

---

[2] Insofar as Muther and Woods assert that a failure by some J-Lot owners to contest the proceedings on remand should bear on the determination of whether the cameras unreasonably interfere with the rights of other J-Lot owners, this argument fails because one J-Lot owner has just as much right to assert his or her easement rights as a group of J-Lot owners.

8

the court did not err by considering that agreement because its terms provided evidence of the need for injunctive relief, which is relevant to Flaherty's claim. *See* M.R. Evid. 401, 402.

B.      Video Cameras as Interfering with the Easement

[¶16]  In determining the reasonableness of an alleged interference with the use of an easement, "[w]e review the court's relevant factual findings for clear error and the court's legal conclusion of reasonableness de novo." *Flaherty*, 2011 ME 32, ¶ 63, 17 A.3d 640.

[¶17]  As with the interpretation of a contract, the interpretation of a settlement, and whether it is ambiguous, is reviewed de novo. *See id.* ¶ 40.  When contract language is unambiguous, it "must be interpreted according to its plain and commonly accepted meaning." *Cookson v. Liberty Mut. Fire Ins. Co.*, 2012 ME 7, ¶ 8, 34 A.3d 1156.  "If the language of the contract is ambiguous, however, its interpretation is a question of fact for the factfinder." *Estate of Barrows*, 2006 ME 143, ¶ 12, 913 A.2d 608.

[¶18]  The trial court did not expressly determine whether the 2006 settlement was ambiguous as to whether it permitted video surveillance.  With the parties electing not to submit any new evidence, we interpret the 2006 settlement de novo because we conclude that it is unambiguous with regard to the video surveillance cameras at issue here.  *See Flaherty*, 2011 ME 32, ¶ 40, 17 A.3d 640.

[¶19]  The relevant language of the 2006 settlement provides, "there's been a lot of controversy with respect to particularly Mr. Woods'[s] approach to various easement holders and that they anticipate that part of the nondisturbance clause includes the fact that peaceful users of the access are not gonna be photographed, approached, or questioned while they're enjoying the easement."  In interpreting this language, the trial court noted that although the 2006 settlement "addressed the subject of photographing users of the easement in general," it "did not specifically address the use of surveillance cameras as part of an access system."  However, the court concluded that "the clear implication of the [2006 settlement] strongly disfavors the use of surveillance cameras."

[¶20]  We recently described video surveillance as "a phenomenon that is lawful in many situations and increasingly common in modern society."  *State v. Strong*, 2013 ME 21, ¶ 9, --- A.3d ---.  A more general survey has observed that "[i]n an age of ubiquitous recording, citizens have already learned to expect that virtually anything they do outside of their home may be recorded by someone." Glenn H. Reynolds & John A. Steakley, *A Due Process Right to Record the Police*, 89 Wash. U. L. Rev. 1203, 1210 (2012).  Such common, unobtrusive recording by a stationary video camera or cameras installed on one's own property for surveillance or security purposes is not the type of confrontational, in-your-face

photography described in the record in *Flaherty* and addressed in the nondisturbance clause of the 2006 settlement agreement.

[¶21] Property, although subject to an easement, remains within the ownership and control of the owner of the servient estate. That ownership and control is subject only to the restriction that the owner of the servient estate not "materially impair" or "unreasonably interfere with" the use of the right-of-way that is allowed by the easement. *See Flaherty*, 2011 ME 32, ¶ 63, 17 A.3d 640 (quoting *Morgan v. Boyes*, 65 Me. 124, 125 (1876)). This principle is further limited to application only within the bounds of the easement. *See Badger v. Hill*, 404 A.2d 222, 227 (Me. 1979); *see also Stanton v. Strong*, 2012 ME 48, ¶ 10, 40 A.3d 1013. The owner of the servient estate "has the right to use its land in a manner not inconsistent with the dominant estate holder's right." *See Flaherty*, 2011 ME 32, ¶ 63, 17 A.3d 640 (quoting *Drummond v. Foster*, 107 Me. 401, 407, 78 A. 470 (1910)).

[¶22] The dominant estate holder's "right" here is the right of access to Secret Beach over the walkway easement.

[¶23] The placement of security cameras at or near the gate across the easement providing access to the beach does not, in any way, impair or interfere with the rights of access that have been guaranteed to those authorized to access the beach across the easement. The video cameras impede access to no greater

extent than the placement of video cameras outside and inside courthouses impedes access to those buildings and courtrooms. Further, there is no evidence suggesting that the video recordings will be used for any purpose other than surveillance for security purposes.

[¶24] The defendants, like any other property owners, may engage in reasonable measures to provide security and surveillance of any part of their property, and certainly may monitor uses of the easement to assure that the easement is not overburdened or used by individuals without authority to access the beach by crossing the easement. The means selected—unobtrusive, stationary video cameras—do not intrude on the easement in any way.

[¶25] Interpreting the 2006 settlement's ban on photography to include stationary video cameras is not reasonably related to prohibiting the personally confrontational photography practices or other acts addressed in the 2006 settlement agreement. The placement of video cameras at issue here does not unreasonably interfere with the access easement benefitting the J-Lot owners, nor do the unobtrusive video cameras violate the non-disturbance clause that limited confrontational, in-person photography practices conducted in or near the easement right-of-way.

The entry is:

> Judgment vacated. Remanded for entry of judgment in favor of the defendants on the video camera issue.

---

**On the briefs:**

James A. Billings, Esq., and Walter F. McKee, Esq., McKee Law, P.A., Augusta, for appellants Helen Muther, Paul Woods, and the Buffett Coastal Trust

Thomas R. McNaboe, Esq., Cumberland Foreside, for appellees Mary Arnold, Robert Flaherty, Sherry Flaherty, and Steve McGrath

Stephen D. Bither, Esq., Portland, for appellees Russell Pierce, Jacqueline Pierce, Todd Colpitts, Niamh Colpitts, David House, Susan House, Paulette York, David Meagher, and Ellen Meagher

**At oral argument:**

James A. Billings, Esq., for appellants Helen Muther, Paul Woods, and the Buffett Coastal Trust

Thomas R. McNaboe, Esq., for appellees Mary Arnold, Robert Flaherty, Sherry Flaherty, Steve McGrath, Russell Pierce, Jacqueline Pierce, Todd Colpitts, Niamh Colpitts, David House, Susan House, Paulette York, David Meagher, and Ellen Meagher

Cumberland County Superior Court docket number RE-2008-98
FOR CLERK REFERENCE ONLY