STATE OF MAINE
YORK, SS.

SUPERIOR COURT
Civil Action
Docket No. CV-11-0177

KITTERY POINT PARTNERS, LLC,

Plaintiff,

v.

BAYVIEW LOAN SERVICING, LLC,
M & T MORTGAGE CORPORATION,
and DANIEL SYSTO,

Defendants.

**DECISION AND ORDER
GRANTING PARTIAL
SUMMARY JUDGMENT**

In this action Kittery Point Partners, LLC ("KPP") seeks a declaratory judgment confirming that a $600,000 promissory note and the mortgage securing the note are invalid, and it also seeks to recover any moneys it has paid under those instruments. Defendants Bayview Loan Servicing, LLC ("Bayview") and M & T Mortgage Corporation ("M & T") have moved for summary judgment pursuant to M.R. Civ. P. 56. For the reasons that follow, the motion is granted.

## I. Facts

KPP is a limited liability corporation first formed and registered under the laws of Delaware on April 21, 2005. (Pl.'s Supp. S.M.F. ¶¶ 11-12.) KPP was formed by an individual named Todd Enright, who, at the time, was advising James and Tudor Austin with regard to certain financial matters. (Pl.'s Supp. S.M.F. ¶¶ 5-6.) The Austins owned property located at 10 Lawrence Lane in Kittery Point, Maine ("the Property"). (Pl.'s Supp. S.M.F. ¶ 33.) Wells Fargo Bank held a first mortgage on the Property. (Pl.'s Supp. S.M.F. ¶ 39.) There is a dispute as to whether the Wells Fargo mortgage has been satisfied and discharged, or not. (*Compare* Pl.'s Supp. S.M.F. ¶ 41

1

*with* Def. Reply to Pl.'s Supp. S.M.F. ¶ 41.)

Mr. Enright proposed to the Austins that he form KPP in order to facilitate a so-called section 1031 exchange. (Pl.'s Supp. S.M.F. ¶ 4.) This required the Austins to convey title to the Property to KPP, which would then hold it for the required period of time. (Pl.'s Supp. S.M.F. ¶ 5.) Mr. Enright was authorized to do so, with the Austin's understanding that he would have sole control over the LLC, which would hold the Property for the required peirod of time and pay other miscellaneous expenses. (Pl.'s Supp. S.M.F. ¶¶ 8-10.) James Austin signed a deed conveying title to the Property to KPP on on May 26, 2005. (Pl.'s Supp. S.M.F. ¶ 33.)

A Certificate of Formation of Kittery Point Partners was filed with the Secretary of State, Division of Corporations, in Delaware on April 21, 2005. (Pl.'s Supp. S.M.F. ¶ 12.) Defendant Daniel Systo[1] was named as the LLC's sole member. (Pl.'s Supp. S.M.F. ¶ 13). Mr. Systo was a maintenance man employed by Mr. Enright to work on his properties; the Austins had met him on a few occaisions but were unaware at the time that Systo was being named as the LLC's sole member. (Pl.'s Supp. S.M.F. ¶¶ 13-16.)

At a special meeting held on March 1, 2005, Mr. Systo, purportedly in his capacity as the sole member of KPP, was authorized to borrow $600,000 from Middlebury Equity Partners, LLC ("Middlebury"), an entity controlled by Mr. Enright. (Pl.'s Supp. S.M.F. ¶¶ 17, 20.) On behalf of Middlebury, Mr. Enright prepared a promissory note with a face amount of $600,000; Mr. Systo signed the note claiming to

---

[1] Daniel Systo was named as a defendant ostensibly because he signed a personal guarantee on the note, and he filed a timely answer. (Compl. ¶ 5; Bayview and M&T Ans. ¶ 5; Systo Ans. ¶ 5; Def.'s S.M.F. ¶ 1 & Ex. B.) However, neither KPP's complaint nor Bayview and M&T's answer and counterclaim seeks any specific relief against Systo. He did not oppose or join the motion for summary judgment. Pursuant to M.R. Civ. P. 7(c)(3), Systo is deemed to have waived any objections to the the motion for summary judgment.

be the sole member of KPP. (Pl.'s Supp. S.M.F. ¶¶ 21-22; Def.'s S.M.F. ¶ 1.) The Austins were unaware of this action at the time, and had agreed with Mr. Enright that KPP's sole purpose was to hold title to the Property. (Pl.'s Supp. S.M.F. ¶¶ 18-19, 26.)

The promissory note, endorsed in blank, states that KPP's promise to pay is "for value." (Def.'s S.M.F. ¶¶ 2-3.) An allonge bearing the endorsement was subsequently executed by Mr. Enright, identified in the instrument as Middlebury's "Duly Authorized Agent." (Def.'s S.M.F. ¶ 4.)

To secure the note, KPP also had executed a mortgage deed dated March 1, 2005 (and acknoweldged April 27, 2005) with respect to the Property. (Def.'s S.M.F. ¶ 5.) The mortgage was recorded in the York County Registry of Deeds, first on August 15, 2007 and then again on Decemer 10, 2007. (Def.'s S.M.F. ¶ 5.) KPP covenanted in the mortgage that it was the sole owner of the property in fee simple and that it had good right and title to mortgage the property to Middlebury. (Def.'s S.M.F. ¶ 6.)

Middlebury sold the KPP paper to defendant Bayview. (Def.'s S.M.F. ¶ 9.) Through its purchasing arm, Bayview Financial, LP, defendant Bayview bought the KPP note from Middlebury for $600,411.21. (Def.'s S.M.F. ¶ 9.) In connection with the purchase, Middlebury conveyed the mortgage to Bayview by an assignment acknowledged on April 27, 2005 and recorded on December 10, 2007 in the York County Registry of Deeds. (Def.'s S.M.F. ¶ 13.) Bayview currently holds the note. (Def.'s S.M.F. ¶ 14.)[2] Defendant M & T also serviced KPP's loan at some point and received

---

[2] It was required as a condition of Bayview's purchase that KPP's mortgage on the Property be the first lien. Although the initial closing statement did not show that the Wells Fargo mortgage had been paid off, a revised statement was subequently prepared showing it had been paid. (Pl.'s Supp. S.M.F. ¶¶ 42-46.) As noted above, on the current record there is a factual dispute as to whether the Wells Fargo mortgage has been satisfied and discharged. When the KPP mortgage to Middlebury was subsequently recorded on August 15, 2007, however, it was recorded as a second priority lien. (Pl.'s Supp. S.M.F. ¶ 51.)

'several payments from KPP. (Def.'s S.M.F. ¶ 15.) M & T never had any other interest in the note or mortgage; and only acted as servicer.

In 2008 Bayview brought a foreclosure action against KPP in this court after payments stopped. (Def.'s S.M.F. ¶ 16.) KPP failed to appear and was defaulted. (Pl.'s Supp. S.M.F. ¶ 68.) The Austins were unaware of the suit when it was filed. (Pl.'s Supp. S.M.F. ¶ 69.) Although it is unclear, it appears that Mr. Enright was no longer in the picture at that point in time. Tudor Austin, acting in her capacity as Trustee of the 10 Lawrence Lane Trust ("Trustee"), became the sole member of KPP in January of 2009. (Pl.'s Supp. S.M.F. ¶ 27; Def.'s Reply to Pl.'s Supp. S.M.F. ¶ 27.) Upon learning of the suit, Tudor Austin, acting as Trustee/sole member of KPP, entered into negotiations with Bayview. (Def.'s S.M.F. ¶ 17.) As a result of the negotiations, KPP and Bayview entered into a Delinqueqncy Repayment Agreement ("Agreement") in Feburary of 2009. (Def.'s S.M.F. ¶ 17; Ex. K.)

As part of the Agreement, KPP acknowledged the validity of the debt obligation and lien on the property. (Def.'s S.M.F. ¶ 18; Def.'s Ex. K at 2.)[3] KPP also released Bayview from:

> [A]ny and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in the Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution [of this Agreement].

(Def.'s Ex. K at 4.)

---

[3] Although KPP now maintains that the Agreement was only to pay what was owed on the note, which in KPP's view is nothing because the loan was never funded, the Agreement specifically acknowledged $600,000 was the principal amount, and agreed to pay $58,372.46 in arrearages to bring the loan current. (Def.'s Ex. K. at 2.)

4

In return for the release, Bayview agreed to stay the foreclosure action to allow KPP to bring the loan current. (Def.'s S.M.F. ¶ 20.) KPP brought the loan current in April of 2010 and Bayview dismissed the foreclosure action. (Def.'s S.M.F. ¶ 22.)[4]

KPP, through the offices of Tudor Austin as Trustee acting as its sole member, was attempting to save the Property from foreclosure when the agreement was signed. (Pl.'s Supp. S.M.F. ¶ 77.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact . . . and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). A fact is material for summary judgment purposes "if it has the 'potential to affect the outcome of the suit.'" *Deutsche Bank Nat'l Trust v. Raggiani*, 2009 ME 120, ¶ 5, 985 A.2d 1 (quoting *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573). If the evidence offered by the parties does not require the fact-finder to choose between competing versions of the truth, there is no genuine issue of material fact. *Morgan v. Kooistra*, 2008 ME 26, ¶ 19, 941 A.2d 447.

When a defendant moves for summary judgment alleging that a contract bars the action, the burden shifts to the plaintiff to demonstrate a reason the court should not enforce the contract. *See Bar v. Dyke*, 2012 ME 108, ¶ 27, 49 A.3d 1280. "To survive defendant's motion for summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." *Doyle v. Dep't of Human Services*, 2003 ME 61, ¶ 9, 824 A.2d 48. "If the plaintiff presents insufficient evidence on an essential

---

[4] KPP acknowledges payments were made, but denies that the payments brought the loan current because "[n]othing was ever owed on the Note." (Pl.'s Opp. Def.'s S.M.F. ¶ 22.)

element in her 'cause of action, such that 'the defendant would . . . be entitled to judgment as a matter of law on that state of the evidence at a trial, the defendant is entitled to a summary judgment.'" *Doyle*, 2003 ME 61, ¶ 9, 824 A.2d 48 (quoting *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571).

### B. Waiver—Validity of the Release Clause

General principles of contract law govern the court's interpretation of agreements containing a release. *Flaherty v. Muther*, 2013 ME 39, ¶ 17, 65 A.3d 1209. "A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Handy Boat Serv. v. Prof'l Servs.*, 1998 ME 134, ¶ 7, 711 A.2d 1306. "The interpretation of an unambiguous contract is a question of law." *Guilford Transp. Indus. v. PUC*, 2000 ME 31, ¶ 13, 746 A.2d 910. "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me. 1983). "If a release is absolute and unequivocal in its terms, it cannot be explained by parol evidence and must be construed according to the language that the parties have seen fit to use." *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131 (citation omitted) (quotation marks omitted). A party challenging the validity of a release has the burden of proving it is invalid. *Borden v. Sandy River & R. L. R. Co.*, 110 Me. 327, 329, 86 A. 242, 243 (Me. 1913).

KPP's opposition fails to address the release or argue that the release is not valid, does not cover the dispute, or is ambiguous, but instead focuses on Bayview's holder in due course argument. (Pl.'s Opp. Mot. Summ. J. at 10-12.) KPP appears to maintain the release had no effect, arguing the whole transaction that was void from the start because· the original loan was never funded—a fact Bayview does not dispute, but

6

dismisses as immaterial to the arguments that (1) the release and forbearance agreement acknowledged the debt and waived all claims arising out of it and (2) Bayview is a holder in due course. It is undisputed Bayview paid $600,411.21 to purchase the note and mortgage from Middlebury Equity Partners. (Def.'s S.M.F. ¶ 9.)

At oral argument, KPP argued for the first time that the release was a product of duress.[5] KPP maintains that the release is invalid because Tudor Austin signed the document on behalf of KPP under the duress of Bayview's threat to foreclose.

Although a valid release will extinguish a cause of action, a release may nevertheless be set aside if shown to be the product of fraud or overreaching. *Glynn v. Atl. Seaboard Corp.*, 1999 ME 53, ¶ 10, 728 A.2d 117. Duress may constitute the kind of overreaching that can invalidate an agreement. *See Duffy v. Metro. Life Ins. Co.*, 94 Me. 414, 47 A. 905 (Me. 1900). However, a party's attempt to enforce its own rights, without more, does not amount to a cognizable duress defense. *See Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 183 (Me. 1984) ("Actions which are not wrongful cannot result in duress . . . . Merely taking advantage of another's financial difficulty is not duress."). Bayview was acting pursuant to the rights in the note and mortgage that Bayview paid value to obtain. Duress is not a ground to invalidate the release.

The release is broad and unambiguous:

> Borrower, by his/her signature hereon, agrees to the accuracy of the allegations contained in this Agreement, as well as to the authenticity of the allegations contained in this Agreement, as well as to the authenticity and validity of each Loan Document referred to herein, and to the validity

---

[5] KPP also argued that although the forbearance acknowledges the debt, it does not specifically acknowledge the amount owed on the debt and is therefore ineffective. That argument is flawed because the forbearance agreement does acknowledge specific sums owed: the $600,000 principal sum as well as the arrears of $58,372.46 that KPP later in fact paid to bring the loan current. It is difficult to accept KPP's arguments that the whole transaction was a sham with a history of payments and written acknowledgement of the validity of the debt.

of the indebtedness described in those Loan Documents. Borrower further agrees and acknowledges that there are no defenses, set-offs or counterclaims to the indebtedness of Borrower pursuant to the Loan Documents. The provisions of this Agreement are a material inducement for Servicer's agreement to forbear from immediately exercising any and all of its remedies upon Borrower's default as referred herein and for entering into this Agreement.

Borrower releases Servicer, its subsidiaries, affiliates, agents, officers, and employees, from any and all claims, damages, liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in the Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution . . . .

(Def.'s Ex. K at 4.)

KPP has made a number of allegations regarding irregularities and improprieties surrounding the actions of Enright and Systo, and the subsequent loan transaction between Enright/MEP and Bayview. However none are sufficient as a matter of law to invalidate the release. To generate a trial-worthy issue challenging the release, KPP would need to come forward with facts that are properly before the court in the summary judgment record, as well as a cognizable legal theory. Aside from the general allegations as to what transpired in connection with the original loan transaction, and speculation as to what Bayview knew or should have known, KPP has failed to generate a disputed issue of material fact or a valid legal theory that would permit the court to set aside the release agreement. The release is valid and extinguishes plaintiff's cause of action.

C. Promissory Estoppel and Holder in Due Course

It is uncessary to address the issues of promissory estoppel and holder in due course as a result of the court's finding on the issue of waiver.

8

### III. Conclusion and Order

Plaintiff has failed to prove the release contained in the February 27, 2009 Delinquency Repayment Agreement is invalid, and therefore its challenge to the enforceability and validity of the promissory note and mortgage is barred.

Accordingly, judgment is hereby entered for Bayview Loan Servicing, LLC, and M & T Mortgage Corporation. This judgment is final as to claims between plaintiff KPP and defendants/counterclaimants Bayview Loan Servicing and M&T Mortgage Corporation. There is no just reason for delay in entering final judgment as to those parties. To the extent that any claims against Daniel Systo remain unresolved, the adjudication of those issues are not necessary to the resolution of claims between KPP and Bayview and M&T and do not prevent the entry of final judgment.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED**

Dated: November 30, 2016

Hon. Wayne R. Douglas
Justice, Superior Court

9