*skip for now*

10/2/20

Need Atty info

clerk Michelle Raine
743-8936

STATE OF MAINE
OXFORD, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE 18-001

LIBBY MCMANUS

Plaintiff

v.

FINAL JUDGMENT

JAMES HILLIARD, *et al.*

Defendants

Before the court are three narrow issues remaining after protracted litigation between the parties. Plaintiff, **Libby McManus f/k/a Libby Ann McManus Morton** owns a parcel of real property in the Town of Porter, County of Oxford and recorded in the Oxford County Western District Registry of Deeds at Book 296, Page 542 (the Deed). Defendant **James Hilliard** owns abutting property by virtue of a deed to him, recorded in the Oxford County Western District Registry of Deeds at Book 595, Page 179. The parties testified that the location of the right of way is depicted in a July 16, 2013 Boundary Survey Sketch Map by Robert A. Yarumian II.

On November 20, 2018, the court (Clifford, J.) decided Plaintiff's motion for summary judgment with respect to Plaintiff's use of the right of way connecting her property to Route 25 in Porter. On January 7, 2020, the court (Horton, J.) granted the joint motion of the parties dismissing all counts of the Complaint and Counterclaim with prejudice except to the extent the November 20, 2018 decision left open issues with respect to the driveway easement raised in Count I of the Plaintiff's Complaint.

1

Specifically, the parties stipulated both in the joint motion and subsequent filings that the three remaining issues are:

1. The width of the driveway easement's travelled way.

2. The width of the driveway's useable sideline, and

3. The extent of any water control systems that defendants may install in the driveway.

In the joint motion, the parties requested that the court decide the remaining issues. The court scheduled a testimonial hearing on September 30, 2020.

FACTS

At the hearing, the court heard the following evidence and finds the following facts. In 1973, Plaintiff built a home on a large parcel owned by her parents known as Lot 5. The home was accessed by a gravel driveway leading from Route 25 to the home. In 1988, Plaintiff's parents carved a new lot out of Lot 5 that included Plaintiff's home known as Lot 5.1. They conveyed Lot 5.1 to Plaintiff. In addition, the Deed conveyed an easement across the existing drive benefitting the Plaintiff and Lot 5.1 and burdening Lot 5.

The Deed granted Plaintiff "a right of way from Route #25 running Northwesterly over roadway as now in existence to lot herein conveyed, to be used in common with Grantors or other persons for all purposes of ingress and egress." The gravelled portion of the roadway in existence in 1988 is the same as the current gravelled portion. The parties stipulate that it is 10 feet wide.

Plaintiff has resided or frequently came to the premises since the driveway was built in 1973. Cars passed each other on the driveway from time to time. Plaintiff or her contractors plowed the road in the winter and pushed the snow to both sides without restriction. She performed occasional road maintenance.

2

In 2012, Defendant Hilliard purchased the balance of Lot 5, apparently as a result of foreclosure. He moved to the property 2014. Defendant Lord joined him in 2015. Defendants worked to develop the property for a variety of agricultural uses. They raise fowl and farm animals, built a greenhouse and have engaged in similar activities on the land.

Disputes arose between the parties over each parties' rights in the road. Many of them have since been resolved. Many of the disputes arose from the lack of detail included in the description of the easement in the deed and each parties' misunderstanding with respect to the scope of rights of a dominant and a servient estate when there is a right of way.

Currently, on the face of the earth is a gravel road that exhibits rutting from wear and tear. There is storm water runoff that comes down the road from the Plaintiff's property and, uninterrupted, can reach the Defendants' greenhouse. The road needs maintenance. Both parties cite this ongoing dispute as a reason there has been no maintenance. Proper grading, a crown on the road to divert water to the side, and potential ditching would resolve water problems on this, as on any, road. All roads require periodic restoration of the proper conditions.[1]

To divert surface water that was reaching the greenhouse Defendants built a berm which has varied in size and currently includes a narrow trench 2 1/4 inches deep in one location. The trench is a limited inconvenience to vehicles as demonstrated by when vehicles go over the berm in the video exhibits. The greenhouse was constructed in 2016.

---

[1] Other than the berm and normal use, the court is unpersuaded that the Defendants have contributed to the road's disrepair.

Over time the Defendants have erected obstacles, including boulders and posts that came within 3 feet of the gravelled road. Those boulders and obstacles have since been removed. The Defendants have also constructed animal pens of wire fences along the road in some locations, sometimes on both sides of the road. There are two large poles near the Plaintiffs' property on each side of the road. At no point do the fences or poles come within 16 feet of each other.

The Plaintiff testified that the fences get in the way of plowing snow, but did not provide any specifics on how much room is needed to plow snow. The Plaintiff also testified the fences interfered with the ability for vehicles to pass each other on the road way. Based on the testimony from various witnesses, the court concludes those occasions when vehicles need to pass each other are rare.

## ANALYSIS

"Generally, the holder of an easement may only exercise the rights granted in a reasonable manner, and cannot do more. Such rights are those "incidental or necessary to the reasonable and proper enjoyment of the easement," and "an easement in general terms is limited to a use . . . as little burdensome to the servient estate as possible for the use contemplated." *Mill Pond Condo. Ass'n v. Manalio*, 2006 ME 135, ¶ 6. The servient estate cannot interfere with the dominant estate holder's "effective use" of the easement. *Badger v. Hill*, 404 A.2d 222, 227 (Me. 1979). Any right-of-way, to truly provide a useful right-of-way for vehicles, must either provide a very wide traveled way or, if the traveled way is narrow, additional space for construction and maintenance of drainage ditches and culverts and, in Maine, sufficient area beside the way to pile snow plowed from the way. *Jipson v. Raubeson*, 1996 Me. Super. LEXIS 144, *11.

Property subject to an easement remains within the ownership and control of the owner of the servient estate. "That ownership and control is subject only to the

4

restriction that the owner of the servient estate not materially impair or unreasonably interfere with the use of the right-of-way that is allowed by the easement. The owner of the servient estate has the right to use its land in a manner not inconsistent with the dominant estate holder's right. *Flaherty v. Muther*, 2013 ME 39, ¶ 21 (citations and quotations omitted).

As described below, the Plaintiff prevails, in part, on Count I and the court grants the Plaintiff's request for a permanent injunction, in part. Because the court is deciding the case with the future holders of the property in mind as well as the parties, the court refers to the "easement owner" to reference the Plaintiffs and their heirs and assigns and the and the "servient owner" to refer to the Defendant Hilliard and his heirs and assigns.

When determining the issues here, we start with the language of the easement. The easement language tells us that the right of way now is the same as what was in existence when the property was transferred in 1988. The easement owner owns the right of way is held in common with the servient owner. We know the rights include "all purposes of ingress and egress," which suggests it is interpreted broadly to allow access to be fully maintained.

1. *Width of the Easement.*

The parties stipulated that the graveled way is 10 feet wide. The court finds that based on the photos, the typical travelled way is also 10 feet wide. The issue is the second question, how much room is needed to each side of the right of way to allow snow removal and other maintenance. Except for the photos and, there was no evidence offered that would allow the court to determine in feet how much room is necessary. In 1988, the easement owner could use as much room as necessary to store

snow. The court declares that the easement owner has the right to use as much room on the servient estate as is reasonably necessary to store snow.

Any related injunctive relief is more difficult to determine. Looking at the photos and the videos, the fences and the two large posts are plainly too close to the travelled way and will, at least in some winters, be an impediment to plowing and storing snow. A snowy winter without melting is going to create a greater need for snow storage than depicted in the exhibits provided by the Plaintiffs. The snow banks would be much higher and wider than those depicted. Larger snow banks are common in Maine. Therefore, the court will order that the fences and two poles be moved back 1 foot from their current location by December 1, 2020 and that a distance of 18 feet be maintained from fence to fence and from post to post. Furthermore, the court will order that with the exception of any existing vegetation, the servient owners may not install or place anything permanent or substantial, such as a fence, a post, or boulders in that 18 foot space.[2] Near Route 25, the fence need only be moved back as far as the edge of any component of the septic system if the component is less than one foot from the current fence location as determined by a soil scientist or septic installer.

The court is concerned that an additional one foot is not enough in certain winters, but does not have enough evidence to fix a greater distance when determining injunctive relief at this time. The court finds and declares that the easement owner has the right to remove the necessary snow and store it on the side of the road regardless of the location of the fence. Snow may fall over and through the fence. If the fence, even

---

[2] Flycatchers, fowl and the like are not substantial as long as they do not unreasonably impede passage in frequency or duration.

as moved, gets in the way of snow storage then the servient owners will need to move it or risk damage to the fence.[3]

The court further declares that the easement owner may not plow a travelled way of more than 10 feet wide as close in location to the existing graveled way as possible. Occasionally a plow may have to push snow in areas outside the 10 foot space to create storage area or improve the passage, but that is to be kept to a minimum and must be in locations and in a manner to cause minimum disruption to the servient estate. Occasional inadvertent variance from the 10 foot requirement is not a violation of this order. The easement owner may not store any snow on the property of the servient estate except what is removed as necessary to maintain the right of way.

The court further declares all vehicle tires must remain on the 10 foot graveled way. Vehicles may pass each other by going off the graveled way. If there is insufficient clearance in any location, vehicles will have to find another location to pass. The easement owners and visitors may go off the graveled way to go around the servient owner's parked vehicles, recalcitrant fowl or other obstacles. If there is insufficient room, any parked vehicle must be promptly removed. There is no requirement that there be enough room for vehicles to pass each other side by side all the way up and down the easement.

The easement owner may need to use and have the right to use the area adjacent to the gravel way for maintenance such as ditching or water maintenance. There is no evidence that such work would extend beyond the fences or that would allow the court to set a distance where such work would be permitted. If it was necessary to the

---

[3] Each foot the Defendant chooses to move the fences back beyond the one foot required by the court significantly reduces the chance either of any conflict or of damage to the fences from snow removal or storage. Two or three feet back from the current location of the fences will not substantially affect the size of the animal pens.

7

maintenance of the road, there may be circumstances where the servient owner may need to move the fence further back.

2. *Water Control*

The road needs maintenance both to improve the use and drainage. The court declares that each party has the right to perform that work without interference from the other as long as the work does not interfere with the rights of the other. That work would include grading, ditching, adding fill and other steps normally completed to maintain a road of this size and type.

The Defendants' drainage berm was installed to direct runoff from the road away from the Defendants greenhouse. Previously, it ran down the road, then off the road and towards the greenhouse. The green house was built in 2016. The servient owner has the right to perform work within the right of way to improve drainage anywhere on their property. They cannot, however, interfere with the easement holder's right of passage and would have to allow temporary passage during any construction. Whether the current berm interferes with passage is a close question. The videos show some degree of rocking when a vehicle crosses the berm. If the berm were any deeper or there was more than one berm, the court would find it unreasonable. In its current state, the berm is not unreasonable.

The court will order that the servient owner may not install any further berms or make the existing berm any taller. Furthermore, if either party maintains the road uphill from the berm to reduce surface flow, the berm must be removed. In addition, the easement owner could make the berm less bothersome by installing a grate over it that stays in place or by any other method that allows the water through. Other than temporary construction, the servient owner may make no changes to the road's

8

travelled way to protect additional development of the property or address surface water issues that arise as a result of such development.

Notwithstanding this order, any change can be made to the road as agreed by the parties.

3. *Amending judgment.*

The Plaintiff's counsel raised an issue regarding a settlement agreement and a method of recording this court's prior holdings with the Registry of Deeds. That is not currently before the court and appears as though it is covered by a settlement agreement. If the parties have not worked that out, the Plaintiff may file a motion pursuant to Rule 59(e) in 14 days to alter this judgment if necessary to get this order or any of the orders of this court in a form to be recorded at the Registry of Deeds.

It is ORDERED as follows:

The court enters judgment on Plaintiff's request to declare the rights of the parties on Count I of the Complaint as described in this final judgment.

The court grants the Plaintiff's request for permanent injunctive relief in part. As spelled out in more detail in this Final Judgment, the court orders the Defendant Hilliard to:

1. Move the fences and poles back from the roadway one foot further from their current location and maintain a distance of 18 feet from fence to fence or pole to pole.

2. Not place any material or permanent obstructions such as boulders, fences or posts in that 18 foot space.

3. Not build any additional berms, not alter the road so that the current berm is any more than a 2 ¼ inch change in elevation, and maintain the current berm so there is no greater than a 2 ¼ inch difference in elevation.

9

Any further request for relief is denied.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

DATE: _Oct 2, 2020_

Thomas R. McKeon
Justice, Maine Superior Court